1  **FARUQI & FARUQI, LLP**
   David E. Bower SBN 119546
2  10866 Wilshire Boulevard, Suite 1470
   Los Angeles, CA 90024
3  Telephone: (424) 256-2884
   Facsimile: (424) 256-2885
4  Email: dbower@faruqilaw.com

5  *Attorneys for Plaintiff*

6

7                **UNITED STATES DISTRICT COURT**
                 **CENTRAL DISTRICT OF CALIFORNIA**
8

9  GARY VARJABEDIAN, On Behalf of Himself   )   Case Number
   and All Others Similarly Situated,          )   <u>8:15-cv-554</u>
10                                              )
                 Plaintiff,                     )   **CLASS ACTION**
11                                              )   **COMPLAINT FOR**
                 v.                             )   **VIOLATION OF**
12                                              )   **SECTIONS 14(d)4 , 14(e)**
   EMULEX CORPORATION, BRUCE C.                )   **AND 20(a) OF THE**
13 EDWARDS, JEFFREY W. BENCK,                  )   **SECURITIES**
   GREGORY S. CLARK, GARY J.                   )   **EXCHANGE ACT OF**
14 DAICHENDT, PAUL F. FOLINO, BEATRIZ          )   **1934 AND 17 C.F.R. §**
   V. INFANTE, JOHN A. KELLEY, RAHUL N.        )   **240.14d-9**
15 MERCHANT, NERSI NAZARI, DEAN A.             )
   YOOST, AVAGO TECHNOLOGIES                   )
16 WIRELESS (U.S.A.) MANUFACTURING,            )
   INC., and  EMERALD MERGER SUB, INC.,        )   **JURY TRIAL**
17                                              )   **DEMANDED**
                                               )
18               Defendants.                   )
   _____
19
20         Plaintiff Gary Varjabedian ("Plaintiff"), on behalf of himself and all others

21 similarly situated, by his attorneys, alleges the following upon information and belief,

22 except as to those allegations specifically pertaining to Plaintiff and his counsel,

23 which are made on personal knowledge, based on the investigation conducted by

24 Plaintiff's counsel.  That investigation included reviewing and analyzing information

25

26 concerning Avago Technologies Wireless (U.S.A.) Manufacturing, Inc. ("Avago")

27

28                              - 1 -
   _____
                 CLASS ACTION COMPLAINT

proposed acquisition (the "Proposed Transaction") of Emulex Corporation ("Emulex" or the "Company"), which Plaintiff (through his counsel) obtained from, among other sources: i) Publicly available press releases, news articles, and other media reports; ii) Publicly available financial information concerning Emulex; and iii) Filings with the U.S. Securities and Exchange Commission ("SEC") made in connection with the Proposed Transaction.

## NATURE OF THE CASE

1.     This is a stockholder class action on behalf of the holders of the common stock of Emulex, against Emulex, certain officers and/or directors of Emulex (the "Individual Defendants" or "Board"), Avago, and Emerald Merger Sub, Inc. ("Merger Sub" and collectively with the Individual Defendants, Emulex and Avago, the "Defendants"), for their violations of Sections 14(d)(4) , 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.SC. §§ 78n(d)(4),78n(e), 78t(a), and SEC Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9").

2.     Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Schedule 14D-9 Solicitation/Recommendation Statement ("Recommendation Statement") to be filed with the SEC.   The Recommendation Statement recommends that Emulex stockholders tender their shares pursuant to the terms of a tender offer (the "Tender

CLASS ACTION COMPLAINT

Offer"), whereby Avago seeks to acquire all the outstanding shares of common stock of Emulex for $8.00 per share (the "Offer Price").

3.     On February 25, 2015 Emulex, Avago and Merger Sub entered into a definitive Agreement and Plan of Merger (the "Merger Agreement").  Pursuant to the terms of the Merger Agreement, Avago commenced the Tender Offer on April 7, 2015.  The Tender Offer is scheduled to expire at 12:00 midnight EST on May 5, 2015.  Following the completion of the Tender Offer, and subject to the terms and conditions of the Merger Agreement, Merger Sub will be merged with and into Emulex, with Emulex surviving as a wholly owned subsidiary of Avago (the "Merger").

4.     Concurrently with the execution of the Merger Agreement, certain Emulex directors and executive officers entered into a Tender and Support Agreement ("Support Agreement") with Avago and Merger Sub, pursuant to which they have agreed to tender their Emulex shares, representing 2.5% of Emulex outstanding public stock, in the Tender Offer.

5.     The  $8.00 per share Offer Price is inadequate, as Emulex has experienced significant growth in recent months and has consistently exceeded management's revenue and earnings expectations.  The Offer Price also fails to adequately value Emulex's product portfolio and prospects for future growth.

6.     Defendants have also agreed to unreasonable deal-protection devices

- 3 -

that unfairly favor Avago and discourage potential bidders from submitting a superior offer for the Company. These preclusive devices include: (i) a non-solicitation provision that restricts the Board from soliciting other potentially superior offers for the Company; (ii) an "information rights" provision, which provides Avago with unfettered access to information about other potential proposals, gives Avago four business days to match any competing offer, and provides Avago with the perpetual right to attempt to match any superior bid; and (iii) a termination fee of $19.5 million, which deters other potential suitors from making a superior proposal. In fact, the termination fee amounts to an unreasonably high 3.2% of the equity value of the Proposed Transaction.

7. As discussed below, the consideration Emulex stockholders stand to receive in connection with the Tender Offer and the process by which Defendants propose to consummate the Proposed Transaction are fundamentally unfair to Plaintiff and the other common stockholders of the Company. Defendants have now asked Emulex stockholders to tender their shares for inadequate consideration based upon the materially incomplete and misleading representations and information contained in the Recommendation Statement, in violation of Sections 14(d)(4), 14(e), and 20(a) of the Exchange Act. Specifically, the Recommendation Statement contains materially incomplete and misleading information concerning the process leading up to the consummation of the Merger Agreement, including potential

conflicts of interest faced by: i) Individual Defendant Jeffrey W. Benck, an Emulex director and the Company's President and Chief Executive Officer ("CEO"); ii) other members of Emulex management; and iii) Goldman, Sachs & Co. ("Goldman Sachs") the financial advisor Emulex retained to evaluate strategic alternatives for the Company and provide a fairness opinion concerning the Proposed Transaction. The Recommendation Statement also contains materially incomplete and misleading information concerning the financial analyses Goldman Sachs performed in support of its fairness opinion.

8. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Individual Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

9. The claims asserted herein arise under Sections 14(d),14(e), and 20(a) of the Exchange Act, 15 U.S.C. §78n. The Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. §1331.

10. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to render the

CLASS ACTION COMPLAINT

exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

11.    Venue is proper in the Central District of California under Section 27 of the Exchange Act, 15 U.S.C. §78aa, as well as pursuant to 28 U.S.C. §1391 because Emulex maintains its world headquarters in this District, each Defendant transacted business in this District, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## PARTIES

12.    Plaintiff currently holds shares of common stock of Emulex and has held such shares at all relevant times.  Plaintiff is a citizen of California.

13.    Defendant Emulex is incorporated under the laws of Delaware and maintains its world headquarters and principles executive offices in Costa Mesa, California.  Emulex provides converged networking solutions for data centers. The Company's product portfolio consists of storage adapters, network interface cards, encrypting adapters, controller chips, server management chips, embedded bridges, switches and routers, and connectivity management software.   The Company's common stock is listed on the New York Stock Exchange under the symbol "ELX".

14.    Defendant Bruce C. Edwards has served as a director of Emulex since May 2000 and as Chairman of the Board since March 2014.   Edwards is also

CLASS ACTION COMPLAINT

Chairman of the Compensation Committee of the Board.  Edwards is a citizen of California.

15.    Defendant Jeffrey W. Benck currently serves as a director, Chief Executive Officer and President of Emulex.  Benck joined Emulex in August 2010 as Executive Vice President and Chief Operating Officer and was subsequently appointed as President and Chief Operating Officer in August 2010.  Benck was named a director of Emulex and President and Chief Executive Officer of the Company in July 2013.  Benck is a citizen of California.

16.    Defendant Gregory S. Clark has served as a director of Emulex since April 2013.  Clark is a citizen of California.

17.    Defendant Gary J. Daichendt has served as a director of Emulex since February 2014 and is a member of the Board's Audit Committee.  Daichendt is also a member of the board of directors of Juniper Networks, Inc. ("Juniper Networks"), along with Individual Defendant Rahul N. Merchant.   Daichendt is a citizen of California.

18.    Defendant Paul F. Folino currently serves as director of Emulex. Folino joined Emulex in May 1993 as President, Chief Executive Officer and director.   Folino was appointed Chairman of the Board in July 2002 and was subsequently appointed to the office of Executive Chairman of Emulex and Chairman of the Board of Directors in September 2006.  Folino is a citizen of California.

CLASS ACTION COMPLAINT

19.    Defendant Beatriz V. Infante has served as a director of Emulex since May 2012.  Infante is a citizen of California.

20.    Defendant John A. Kelley is and has been a director of Emulex at all relevant times.  Kelley is a citizen of Colorado.

21.    Defendant Rahul N. Merchant has served as a director of Emulex since February 2014 and is a member of the Board's Audit Committee.  Merchant is also a member of the board of directors of Juniper Networks.  Merchant is a citizen of New Jersey.

22.    Defendant Nersi Nazari has served as a director of Emulex since June 2011.  Nazari is a citizen of California.

23.    Defendant Dean A. Yoost has served as a director of Emulex since August 2005.  Yoost is a citizen of California.

24.    Defendant Avago is incorporated under the laws of Delaware and maintains its principle executive offices at 350 West Trimble Road, San Jose, California 95131.

25.    Defendant Merger Sub is a Delaware corporation and a wholly-owned subsidiary of Avago, and was created for purposes of effectuating the Proposed Transaction.

///

///

- 8 -

CLASS ACTION COMPLAINT

1

### CLASS ACTION ALLEGATIONS

2

26.     Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of

3

4

Civil Procedure, individually and on behalf of the other public stockholders of

5

Emulex who are being and will be harmed by Defendants' actions described herein

6

(the "Class").  The Class specifically excludes Defendants herein, and any person,

7

firm, trust, corporation or other entity related to, or affiliated with, any of the

8

9

Defendants.

10

27.     This action is properly maintainable as a class action.

11

28.     The Class is so numerous that joinder of all members is impracticable.

12

13

As of January 21, 2015 Emulex had in excess of 71 million shares of common stock

14

outstanding.  Members of the Class are dispersed throughout the United States and

15

are so numerous that it is impracticable to bring them all before this Court.

16

17

29.     Questions of law and fact exist that are common to the Class, including,

18

among others:

19

20

(a)     whether the Defendants have violated Sections 14(d)(4) , 14(e)

21

and 20(a) of the Exchange Act in connection with the Proposed Transaction; and

22

(b)     whether Plaintiff and the other members of the Class would be

23

24

irreparably harmed if the Proposed Transaction complained of herein is consummated

25

as currently contemplated.

26

27

28

### CLASS ACTION COMPLAINT

30.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.   Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class.   Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

31.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants, or adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

32.     Preliminary and final injunctive relief on behalf of the Class as a whole is entirely appropriate because Defendants have acted, or refused to act, on grounds generally applicable and causing injury to the Class.

## **SUBSTANTIVE ALLEGATIONS**

**A.     Emulex's Background & Recent Financial Performance**

33.     Founded in 1979 and headquartered in Costa Mesa, California, Emulex is a leader in network connectivity, monitoring and management solutions for global

CLASS ACTION COMPLAINT

networks that support enterprise, cloud, government and telecommunications. Emulex provides connectivity, monitoring and management solutions for high-performance networks, delivering provisioning, end-to-end application visibility, optimization and acceleration for the next generation of software-defined, telco and Web-scale data centers.  The Company's I/O connectivity portfolio, which has been designed into server and storage solutions from leading OEMs and ODMs worldwide, enables organizations to manage bandwidth, latency, security and virtualization.  The Emulex network visibility portfolio enables global organizations to monitor and improve application and network performance management.   Emulex sells its products to original equipment manufacturers, original design manufacturers, and end users, as well as through various distribution channels, including value added resellers, systems integrators, industrial distributors, direct market resellers, and other resellers.

34.     The Company is a leading supplier of fiber-channel and related products selling primarily into server and enterprise storage OEM's.  Emulex's fiber-channel business is considered to be very sustainable, and potential competitors face significant barriers to entry into the market.  Accordingly, Emulex is likely to maintain its stronghold on the relevant market, which is expected to continue to grow.

35.     Emulex has announced impressive financial results over the past several quarters, which caused its stock price to increase by approximately 42% between

CLASS ACTION COMPLAINT

October 2014 and the time the Proposed Transaction was announced in late-February

2015, as reflected by the chart below:



36.      On October 30, 2014 the Company announced the following impressive

results for the first quarter of 2015: Total revenue was $104 million, up 4%

sequentially and **above the $93 million to $99 million initial guidance range**

provided during the Company's fiscal fourth quarter earnings call, driven by strength

in Network and Storage Connectivity Products; non-GAAP diluted earnings of $0.14

and a GAAP loss of $0.01 per share as compared to guidance of $0.07 - $0.11 on a

non-GAAP basis and a $0.07 - $0.11 loss on a GAAP basis; non-GAAP operating

income of $13 million, up 90% versus the prior quarter, reflecting stronger revenue

performance, consistent non-GAAP gross margin, and operational discipline; and $21

CLASS ACTION COMPLAINT

million in cash from operations in the quarter with an ending cash, cash equivalents, and investments balance of $174 million.

37.     Commenting on the strong first quarter results, Individual Defendant Benck stated:

> We entered our fiscal 2015 on strong footing, with solid performance across multiple categories including our Ethernet and Fibre Channel products, **allowing us to outperform versus expectations**…Over the past forty-five days we have launched an **unprecedented** number of OEM and ODM design wins for our Connectivity products, designed to meet the performance requirements of Grantley-based servers, with more to come.  We look forward to seeing these enterprise products ramp in the market over the coming year.

(emphasis added).

38.     Most recently on January 29, 2015 the Company announced the following impressive results for the second quarter of 2015: Total revenue was $111 million, **above the high end of the initial guidance range**, aided by strong sequential and year-on-year growth in Gen 5 (16Gb) Fibre Channel products; non-GAAP diluted earnings of $0.24, up 14% year-on-year, and GAAP earnings of $0.06 as compared to a prior year loss of $0.05, **both above their respective initial guidance range**; and non-GAAP operating margin of 18%, up 130 basis points year-on-year and 560 basis points sequentially, with GAAP operating income of $8 million as compared to an operating loss of $2 million in the prior year and operating income of $1 million in the prior quarter.

39.     Commenting on the strong second quarter results, Individual Defendant Benck stated:

> The second quarter demonstrated continued progress with initiatives put in place at Emulex over the last 18 months, including the delivery of the broadest set of new Ethernet and Fibre Channel products in the Company's history, increased focus on execution, and a greater emphasis on fiscal discipline…Coupled with healthy demand for our Fibre Channel portfolio and share gains aided by accelerating adoption of our latest Gen 5 Fibre Channel products, **we again exceeded the high end of our initial revenue and earnings guidance.**

(emphasis added).

40.     In sum, Emulex has shown significant signs of growth during the most recent quarters, exceeding management's revenue and earnings guidance.  Despite the Company's strong financial prospects, the Board has now agreed to abruptly sell the Company at a price below its intrinsic value, to the detriment of Emulex's common stockholders.

**B.     The Proposed Transaction Undervalues Emulex Shares**

41.     On February 25, 2015, Emulex and Avago issued a joint press release announcing that they had entered into the Merger Agreement.   The press release stated in relevant part:

> SINGAPORE and COSTA MESA, CA – Feb 25, 2015 – Avago Technologies Limited (NASDAQ: AVGO) and Emulex Corporation (NYSE: ELX) today announced that they have entered into a definitive agreement under which Avago will acquire Emulex, a leader in network connectivity, monitoring and management, in an

**CLASS ACTION COMPLAINT**

all-cash transaction valued at approximately $606 million, or $609 million net of cash and debt acquired. Under the terms of the agreement, which has been approved by the Boards of Directors of both companies, a subsidiary of Avago will commence a tender offer for all of the outstanding shares of Emulex common stock for $8 per share in cash. Avago expects to fund the transaction with cash available on its balance sheet.

"Emulex's connectivity business fits very well with Avago's existing portfolio serving the enterprise storage end market," stated Hock Tan, President and Chief Executive Officer of Avago. "We are excited to welcome the Emulex team to Avago."

"This combination represents a great opportunity for Emulex and its employees to build upon our history of delivering leading-edge solutions to our customers, while providing immediate value to our stockholders," said Jeffrey Benck, President and Chief Executive Officer of Emulex. "Our leading portfolio is a strong complement to Avago's offerings and capabilities, accelerating our strategy to support next generation server and storage architectures."

Upon closing, the transaction is expected to be immediately accretive to Avago's non-GAAP earnings per share.

Senior members of the Emulex management team and all of the directors of Emulex, collectively owning approximately 2.5 percent of Emulex's outstanding shares have executed Tender and Support Agreements in support of the transaction.

The transaction is subject to customary closing conditions, including the tender into the offer by Emulex stockholders of shares representing at least a majority of the outstanding shares of Emulex common stock on a fully diluted basis, and the receipt of relevant regulatory approvals, including the expiration or termination of the applicable waiting period under the Hart-Scott-Rodino Antitrust Improvements Act and relevant foreign antitrust laws. It is expected that the transaction will close in the second half of Avago's fiscal year ending November 1, 2015.

- 15 -

CLASS ACTION COMPLAINT

42.    The $8.00 per share Offer Price that Emulex's public stockholders stand to receive is insufficient, as it fails to adequately account for the Company's strong financial prospects and the tremendous benefits Avago will reap from the Merger.

43.    Indeed, analysts from TheStreet, a leading digital financial media company, recently reported that Emulex's strengths can be seen in multiple areas, such as its increase in net income, good cash flow from operations and growth in earnings per share. The article went on to state that the Company's net income growth for the second quarter compared to the same quarter the previous year had significantly exceeded that of the S&P 500 and the communications equipment industry.  The Company's net income increased by 80.3% when compared to the same quarter one year prior.  The article further stated that the Company's net operating cash flow has significantly increased by 319.52% to $20.85 million when compared to the same quarter last year. In addition, the Company vastly surpassed the industry average cash flow growth rate.

44.    Further, Avago has stated that the Proposed Transaction will be immediately accretive to earnings per share on a non-GAAP basis, and that it expects Emulex businesses to contribute approximately $250 million to $300 million in annual net revenue with improved operating margins beginning in fiscal year 2016.

45.    In sum, Avago will capitalize on Emulex's significant prospects for future growth and profits while depriving the Company's stockholders of the ability

to maintain equity in the post-Merger company, and without fairly compensating them for their Emulex shares.

## C.    The Preclusive Deal Protection Devices Deter Superior Offers

46.    In addition to failing to obtain adequate consideration for Emulex's stockholders, the Individual Defendants agreed to certain deal protection devices that operate conjunctively to lock-up the Proposed Transaction and likely ensure that no competing offers for the Company will emerge.

47.    First, the Merger Agreement's no solicitation provision prohibits the Company or the Individual Defendants from taking any affirmative action to obtain a better offer for the Company's stockholders.  Specifically, Section 5.3 of the Merger Agreement states that the Company and the Individual Defendants may not solicit, initiate, encourage or facilitate any alternative acquisition proposal.

48.    Furthermore, Section 5.3 of the Merger Agreement grants Avago recurring and unlimited matching rights, which provides Avago with: (i) unfettered access to confidential, non-public information about competing proposals from third parties which it can use to prepare a matching bid; and (ii) four business days to negotiate with Emulex, amend the terms of the Merger Agreement, and make a counter-offer in the event a superior offer is received.

49.    The no solicitation and matching rights provisions essentially ensure that a superior bidder will not emerge, as any potential suitor will likely be deterred from

CLASS ACTION COMPLAINT

expending the time, cost, and effort of making a superior proposal while knowing that Emulex can easily foreclose a competing bid.   As a result, these provisions unreasonably favor Avago, to the detriment of Emulex's public stockholders.

50.   Additionally, Section 7.2 of the Merger Agreement provides that Emulex must pay Avago a termination fee of $19.5 million in the event the Company elects to terminate the Merger Agreement to pursue a superior proposal.  The termination fee, which amounts to an unreasonably high 3.2% of the Proposed Transaction's equity value, further deters other potential suitors from making a superior offer for the Company, as any competing bidder would have to pay a naked premium for the right to provide Emulex's stockholders with a superior offer.

51.   Ultimately, these deal protection provisions restrain the Board's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company.

**D.   The Recommendation Statement Provides Stockholders With Materially Incomplete and Misleading Information Concerning The Proposed Transaction**

52.   On April 7, 2015, Defendants caused the materially incomplete and misleading Recommendation Statement to be filed with the SEC.   While the Recommendation Statement provides a summary of the strategic review process the Board undertook prior to voting to enter into the Merger Agreement with Avago, and the financial analyses Goldman Sachs performed in support of its fairness opinion, it

omits certain pieces of critical information which render portions of the Recommendation Statement materially incomplete and misleading.

53.    With respect to Individual Defendant Benck's post-Merger employment with the combined company, the Recommendation Statement (at page 21) indicates that on February 20, 2015 Benck met with Avago's CEO and discussed "how the Emulex management team might fit within the Avago organization" and "the possibility of Mr. Benck continuing as manager of the Emulex business unit within Avago if the parties reach agreement, but agreed to defer **any further** discussion of the matter and potential terms until such time, if it occurred, as the Merger Agreement was signed and the transaction announced." This statement suggests that the decision to sell the Company to Avago was unaffected by any understandings between Avago and Emulex's management about future economic arrangements. However, the Recommendation Statement fails to provide any additional information concerning the status of such discussions since the Merger Agreement was signed, and the employment status of Mr. Benck and the rest of Emulex's management team currently remains a mystery to stockholders.    And even if there were no formal negotiations concerning post-Merger employment between Benck and Avago, the Recommendation Statement fails to provide a clear statement concerning the specific information that was exchanged between Benck and Avago's CEO concerning post-Merger employment, including whether any general employment compensation terms

CLASS ACTION COMPLAINT

were discussed.  Accordingly, the Recommendation Statement creates the materially misleading impression that Emulex management was given no expectations regarding potential post-Merger employment opportunities with Avago, and it should be corrected to clarify the extent of the actual discussion between Benck and any other members of Emulex management and Avago.

54.     Further, the Recommendation Statement fails to provide any information concerning how much business Goldman Sachs has done, is doing, or expects to do in the future with Avago or its affiliates.   Without such information, Emulex stockholders are unable to determine whether Goldman Sachs faced any conflicts of interest that impaired its ability to render an impartial fairness opinion.  By failing to affirmatively discuss whether or not Goldman Sachs has a business relationship with Avago, the Recommendation Statements creates the impression that no such relationship exists.  However, Goldman Sachs analysts and/or its trading desk have provided insight into Avago during 2013 and 2014 regarding the stock's viability, and it is not clear if Avago compensated Goldman Sachs and what the extent of their relationship is.  Stockholders are entitled to a clear statement concerning whether or not Goldman Sachs has provided, is currently providing, or plans to provide services to Avago for which it will receive compensation so that they can determine whether Goldman Sach's fairness opinion is tainted by a material conflict of interest.

55.     The Recommendation Statement also fails to provide critical information concerning why indications of interest received from two interested bidders dramatically decreased from their preliminary offer points.     Specifically, the Recommendation Statement states that while one private equity firm had provided an initial preliminary indication of interest at $8.50-$9.00 per share, it ultimately submitted an indication of interest in the range of $7.25-$7.50 per share, and that while Sponsor B provided an initial preliminary indication of interest at $9.25 per share, it subsequently submitted an indication of interest of $7.25-$7.35 per share. However, the Recommendation Statement provides no information concerning why the preliminary indications of interest from these parties, which are significantly above the $8.00 per share Offer Price, dramatically decreased within a short time period.   This information is germane to Emulex stockholders' ability to consider the Proposed Transaction and whether or not to tender their shares.    Without such explanation, Emulex stockholders are forced to guess why interested acquirers bids decreased so steeply, and lack information necessary to determine whether their preliminary indications of interest more accurately valued the Company.

56.     The Recommendation Statement also fails to provide a fair summary of the key inputs utilized in the financial analyses Goldman Sach's performed in support of its fairness opinion.    Information underlying or supporting the purported "fair value" of the Offer Price is material to stockholders and must be disclosed.

CLASS ACTION COMPLAINT

Stockholders are entitled to the information necessary to make an informed decision concerning the adequacy of the consideration they are being offered via the Tender Offer, including the underlying data Goldman Sach's relied upon, the key assumptions that Goldman Sachs made in performing its valuation analyses, and the range of values that resulted from those analyses.  Here, Goldman Sach's analyses incorporated certain critical assumptions that significantly affected the output (valuation) of those analyses.  Without this material information, stockholders have no basis on which to judge the adequacy of Avago's offer.   The following information was not adequately disclosed and is material to stockholders:

     a. With respect to Goldman Sach's *Selected Companies Analysis*, the Recommendation Statement fails to provide: i) the multiples observed for each of the selected companies; and ii) the basis for assuming a 10% tax rate for Emulex and a 35% tax rate for the Selected Companies in connection with calculating excess cash.  In support of Goldman Sach's fairness opinion, the Recommendation Statement includes a discussion of Goldman Sach's *Selected Companies Analysis*, a comparative valuation methodology.   The Recommendation Statement does not disclose, however, the specific multiples for each of the public companies observed in connection with this analysis.  Without these multiples investors have no way to assess the assumptions made by

CLASS ACTION COMPLAINT

Goldman Sach's to derive its implied ranges of value for Emulex or how those assumptions compared to the market information provided in the Recommendation Statement.  Further, the Recommendation Statement indicates that Goldman Sachs calculated a Cash-Adjusted P/E multiple which relied upon a calculation of excess cash.   In order to calculate excess cash, Goldman Sachs assumed a 10% tax rate for Emulex and 35% tax rate for the Selected Companies; however, the Recommendation Statements fails to provide any explanation concerning why these assumed tax rates drastically varied from each other.  This dramatic difference in tax rates likely had a significant impact on this multiple, and also seems at odds with corporate tax rates promulgated by the IRS which range from 15% to 35%.  These omissions render the information concerning the *Selected Companies Analysis* set forth on page 28 of the Recommendation Statement materially misleading;

b.  With respect to Goldman Sach's *Illustrative Present Value of Future Share Price Analysis*, the Recommendation Statement fails to provide: i) the "estimates of Emulex's cost of equity" which were used to calculate the applied illustrative discount rate of 13.9%; ii) the rationale for applying illustrative price to one-year forward EPS multiples of 9.0x to 12.0x; iii) the rationale for applying illustrative price to one-year forward

CLASS ACTION COMPLAINT

cash-adjusted EPS multiples of 8.0x to 11.0x; and iv) the basis for using only the forecasts for fiscal years 2016 through 2018 in connection with this analysis, when management provided Goldman Sachs with a revised forecast with projections for the second half of fiscal year 2015 through 2019. Without any explanation concerning why Goldman Sachs selected these respective multiples and assumptions, stockholders have no basis from which to conclude that Goldman Sach's assumptions were reasonable;

c. With respect to Goldman Sach's *Illustrative Discounted Cash Flow Analysis*, the Recommendation Statement fails to provide: i) the rationale for using illustrative discount rates ranging from 11.0% to 13.0%; ii) the rationale for using an illustrative perpetuity growth rate ranging from 2.0% to 4.0%; and iii) the Company's weighted average cost of capital ("WACC") and the key inputs used to calculate the Company's WACC. These omissions are material because the calculation of discount rates, perpetuity growth rates, and WACC require a number of inputs and assumptions by the financial advisor. It is important for investors to have insight into these assumptions to assess their soundness. Moreover, the selection of a discount rate often has the single largest impact on valuation, and it is a calculation left to the

- 24 -

CLASS ACTION COMPLAINT

investment bank's discretion.  For these reasons, these omissions render the Recommendation Statement's discussion of Goldman Sach's *Illustrative Discounted Cash Flow Analysis* set forth on page 29 materially incomplete and misleading.

57.     The Recommendation Statement further fails to indicate whether Goldman Sachs performed a precedent transactions analysis, which is one of the most common and widely accepted valuation analyses upon which a fairness opinion can rest.  The Recommendation Statement must disclose the results of such an analysis if one was performed, and if not, it must explain why Goldman Sachs chose not to conduct one.  The omission of a precedent transactions analysis is particularly glaring here, considering the widespread merger activity that has occurred within the semiconductor industry recently, which undoubtedly makes this type of analysis particularly useful and relevant to Emulex stockholders.

58.     Defendants knowingly failed to disclose the material information discussed above.  Without materially complete disclosure of the information set forth above, stockholders cannot make an informed decision concerning whether or not to tender their shares.  Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

///

CLASS ACTION COMPLAINT

**E.     Defendants Knew or Recklessly Disregarded that the Recommendation Statement Omits Material Information**

59.     The Individual Defendants, and thus Emulex, knew or disregarded that the Recommendation Statement contains the materially incomplete and misleading information discussed above.

60.     Specifically, Defendants undoubtedly reviewed the contents of the Recommendation Statement before it was filed with the SEC.  Indeed, Individual Defendant Benck has attested that he made due inquiry concerning the information set forth in the Recommendation Statement.  Defendants were thus aware that the Recommendation Statement contains misleading partial disclosures of the history leading up to the Merger.

61.     Further, the Recommendation Statement indicates that on February 21, 2015:

> A representative of Goldman Sachs then led **an extensive discussion** of Goldman Sachs' analysis of the possible transaction from a financial point of view based on the indicated price of $8.00 in cash per Share. He noted that Goldman Sachs' preliminary analysis, based on the work undertaken to date, on the factors and assumptions described and on the forecasts of Emulex's management, indicated that the $8.00 in cash per Share was in excess of the standalone value of Emulex indicated in Goldman Sachs' analysis. He also noted that $8.00 in cash per Share represented a 25% premium to the closing trading price on February 19, 2015 and a 34% premium to the 90-day trading average price on February 19, 2015. **He reviewed the multiples that $8.00 in cash per Share implied and compared those to trading multiples for selected companies**, reviewed Emulex's potential Share price based on certain multiples and management's forecasts and reviewed Goldman Sachs' preliminary discounted cash flow analysis.

62.     The Recommendation Statement also indicates that on February 25, 2015 Goldman Sachs provided the Board with an analysis of the Proposed

- 26 -

CLASS ACTION COMPLAINT

Transaction and presented its oral opinion that based upon and subject to the factors and assumptions set forth therein and reviewed at the meeting, the $8.00 per share Offer Price is fair from a financial point of view to Emulex's stockholders.   The Recommendation Statement further indicates that the Board considered the various financial analyses presented by Goldman Sachs in connection with approving the Merger Agreement and making its recommendation that Emulex stockholders tender their shares in the Tender Offer.

63.     Accordingly, the Individual Defendants and Emulex undoubtedly reviewed or were presented with the material information concerning Goldman Sach's financial analyses which has been omitted from the Recommendation Statement, and thus knew or recklessly disregarded that such information has been omitted.

### FIRST CAUSE OF ACTION

**Claim for Violations of Section 14(e) of the Exchange Act Against
All Defendants**

64.     Plaintiff repeats and realleges each allegation contained above as if fully set forth herein.

65.     Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading…" 15 U.S.C. §78n(e).

CLASS ACTION COMPLAINT

66.     As discussed above, Emulex filed and delivered the Recommendation Statement to its stockholders, which Defendants knew or recklessly disregarded contained material omissions and misstatements as set forth above.

67.     During the relevant time period, Defendants disseminated the false and misleading Recommendation Statement above.   Defendants knew or recklessly disregarded that the Recommendation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

68.     The Recommendation Statement was prepared, reviewed and/or disseminated by Defendants.   It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the Tender Offer, the intrinsic value of the Company, and potential conflicts of interest faced by certain Individual Defendants and the Company's financial advisor.

69.     In so doing, Defendants made untrue statements of material facts and omitted material facts necessary to make the statements that were made not misleading in violation of Section 14(e) of the Exchange Act.   By virtue of their positions within the Company and/or roles in the process and in the preparation of the Recommendation Statement, Defendants were aware of this information and their obligation to disclose this information in the Recommendation Statement.

CLASS ACTION COMPLAINT

70.    The omissions and incomplete and misleading statements in the Recommendation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal. In addition, a reasonable investor would view the information identified above which has been omitted from the Recommendation Statement as altering the "total mix" of information made available to stockholders.

71.    Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

72.    The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

///

///

CLASS ACTION COMPLAINT

## SECOND CAUSE OF ACTION

### Claim for Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 (17 C.F.R. § 240.14d-9) Against All Defendants

73.     Plaintiff repeats and realleges each allegation contained above as if fully set forth herein.

74.     Defendants have caused the Recommendation Statement to be issued with the intention of soliciting stockholder support of the Proposed Transaction.

75.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers. Specifically, Section 14(d)(4) provides that:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

76.     SEC Rule 14d-9(d), which was adopted to implement Section 14(d)(4) of the Exchange Act, provides that:

> Information required in solicitation or recommendation. Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof.

77.     In accordance with Rule 14d-9, Item 8 of a Schedule 14D-9 requires a Company's directors to:

> Furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

CLASS ACTION COMPLAINT

78.     The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above.   Moreover, in the exercise of reasonable care, Defendants should have known that the Recommendation Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

79.     Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

80.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

///

///

///

CLASS ACTION COMPLAINT

## THIRD CAUSE OF ACTION

### Claim for Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

81.    Plaintiff repeats and realleges each allegation contained above as if fully set forth herein.

82.    The Individual Defendants acted as controlling persons of Emulex within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Emulex, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

83.    Each of the Individual Defendants were provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

84.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore,

- 32 -

CLASS ACTION COMPLAINT

is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same.  The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of this document.

85.    In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.   The Recommendation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

86.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

87.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Sections 14(e) and 14(d)(4) of the Exchange Act and Rule 14d-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

CLASS ACTION COMPLAINT

1

## **PRAYER FOR RELIEF**

2

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of

3

the Class and against Defendants as follows:

4

5

A.     Declaring that this action is properly maintainable as a Class action and

6

certifying Plaintiff as Class representative;

7

B.     Enjoining Defendants, their agents, counsel, employees and all persons

8

9

acting in concert with them from consummating the Proposed Transaction, unless and

10

until the Company discloses the material information identified above which has been

11

omitted from the Recommendation Statement;

12

13

C.     Rescinding, to the extent already implemented, the Proposed Transaction

14

or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

15

D.     Directing the Individual Defendants to account to Plaintiff and the Class

16

17

for all damages suffered as a result of the Individual Defendants' wrongdoing;

18

E.     Awarding Plaintiff the costs and disbursements of this action, including

19

20

reasonable attorneys' and experts' fees; and

21

F.     Granting such other and further equitable relief as this Court may deem

22

just and proper.

23

Dated:  April 8, 2015

24

**FARUQI & FARUQI, LLP**

25

26

/s/ *David E. Bower*___
David E. Bower

27

10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024

28

- 34 -

CLASS ACTION COMPLAINT

Telephone: (424) 256-2884
Facsimile:  (424) 256-2885
Email:  dbower@faruqilaw.com

*Counsel for Plaintiff*

**OF COUNSEL:**
**FARUQI & FARUQI, LLP**
Juan E. Monteverde
Miles D. Schreiner
369 Lexington Avenue, 10th Fl.
New York, NY 10017
Tel.: (212) 983-9330
Fax: (212) 983-9331
Email: jmonteverde@faruqilaw.com
        mschreiner@faruqilaw.com

*Counsel for Plaintiff*

CLASS ACTION COMPLAINT