1  **FARUQI & FARUQI, LLP**
2  David E. Bower (119546)
   10866 Wilshire Boulevard, Suite 1470
3  Los Angeles, CA 90024
   Telephone: (424) 256-2884
4  Facsimile: (424) 256-2885
   dbower@faruqilaw.com
5
   *Attorneys for Plaintiff*
6
   (Additional counsel on signature page)
7
8           **UNITED STATES DISTRICT COURT**
            **CENTRAL DISTRICT OF CALIFORNIA**
9
10 | GARY VARJABEDIAN, On Behalf of | Case No. 8:15-cv-00554-CJC-JCG |
   Himself and All Others Similarly Situated,

   **CLASS ACTION**
11
                   Plaintiff,          **PLAINTIFF'S MEMORANDUM**
12                                      **OF POINTS AND**
                                        **AUTHORITIES IN**
13                 v.                   **OPPOSITION TO**
                                        **DEFENDANTS' MOTION TO**
14                                      **DISMISS**

15 EMULEX CORPORATION, BRUCE C.     Date Action Filed: April 8, 2015
   EDWARDS, JEFFREY W. BENCK,
16 GREGORY S. CLARK, GARY J.        Date: January 11, 2016
   DAICHENDT, PAUL F. FOLINO,       Time: 1:30 p.m.
17 BEATRIZ V. INFANTE, JOHN A.      Place: Courtroom 9B
   KELLEY, RAHUL N. MERCHANT,              [Hon. Cormac J. Carney]
18 NERSI NAZARI, DEAN A. YOOST,
   AVAGO TECHNOLOGIES WIRELESS
19 (U.S.A.) MANUFACTURING, INC., and
   EMERALD MERGER SUB, INC.,
20
21
22                 Defendants.
23
24
25
26
27
28

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT .................................................................1

II.   LEGAL ARGUMENT .........................................................................3

    A.   Plaintiff Has Adequately Pled His § 14(e) Claim ..............................3

        1.   Goldman's SST Analysis Was Not Publicly Available ...............3

        2.   Goldman's SST Analysis Was Material ........................................6

        3.   Plaintiff Should Not Be Required to Plead Scienter for His § 14(e) Claim ...............................................................................10

        4.   Plaintiff Has Adequately Pled Scienter Regardless.....................15

            i.    The Scienter Pleading Requirement.........................15

            ii.   Plaintiff Has Pled Scienter by Alleging that Defendants Made Misleading Statements and Omissions Despite Having Access to Contradictory Information ........................................17

            iii.  Defendants Knew of the SST Analysis, and Knew that Failure to Reveal It Would Likely Mislead Emulex Shareholders .................................................18

            iv.   The Individual Defendants Had A Motive and Opportunity to Commit Fraud..................................19

            v.    Plaintiff's Scienter Allegations Are Sufficiently Individualized............................................................22

    B.   Plaintiff Has Adequately Pled His § 14(d)(4) and Rule 14d-9 Claim ....24

    C.   Plaintiff Has Adequately Pled His § 20(a) Claim ...................................28

III.  CONCLUSION .................................................................................28

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Aaron v. SEC*,
   446 U.S. 680 (1980)..................................................................................12, 13

*In re Amgen Inc. Sec. Litig.*,
   No. CV 07-2536 PSG,
   2014 U.S. Dist. LEXIS 183034 (C.D. Cal. Aug. 4, 2014) .....................................17

*In re BankAmerica Corp. Sec. Litig.*,
   78 F. Supp. 2d 976 (E.D. Mo. 1999) ......................................................................14

*Berson v. Applied Signal Tech., Inc.*,
   527 F.3d 982 (9th Cir. 2008) ..................................................................................17

*In re BP Prudhoe Bay Royalty Trust Sec. Litig.*,
   No. C06-1505 MJP,
   2007 U.S. Dist. LEXIS 83007 (W.D. Wash. Oct. 26, 2007)............................16, 22

*Brewer v. Lincoln Int'l Corp.*,
   148 F. Supp. 2d 792 (W.D. Ky. 2000) ......................................................................6

*Brown v. Brewer*,
   No. CV 06-3731-GHK,
   2008 U.S. Dist. LEXIS 108904 (C.D. Cal. July 14, 2008) .....................................28

*Brown v. Brewer*,
   No. CV 06-3731-GHK,
   2010 U.S. Dist. LEXIS 60863 (C.D. Cal. June 17, 2010).......................................14

*Brown v. China Integrated Energy, Inc.*,
   No. CV 11-2559 MMM,
   2013 U.S. Dist. LEXIS 90279 (C.D. Cal. Apr. 22, 2013).......................................23

*In re Celera Corp. S'holder Litig.*,
   No. 6304-VCP, 2012 Del. Ch. LEXIS 66 (Del. Ch. Mar. 23, 2012) .....................11

*City of Phila. v. Fleming Cos.*,
   264 F.3d 1245 (10th Cir. 2001) ........................................................................18, 19

*City of Pontiac Gen. Emps.' Ret. Sys. v. Wal-Mart Stores, Inc.*,
   No. 12-CV-5162, 2014 U.S. Dist. LEXIS 136165 (W.D. Ark. Sept. 26, 2014)....19

ii

*Clearfield Bank & Trust Co. v. Omega Fin. Corp.*,
    65 F. Supp. 2d 325 (W.D. Pa. 1999) ....................................................................... 13

*Data Probe Acquisition Corp. v. Datatab, Inc.*,
    568 F. Supp. 1538 (S.D.N.Y. 1983) ...................................................................... 11

*Dixon v. Cost Plus*,
    No. 12-CV-02721-LHK, 2012 WL 2499931 (N.D. Cal. June 27, 2012) ......... 24, 25

*Elec. Specialty Co. v. Int'l Controls Corp.*,
    409 F.2d 937 (2d Cir. 1969) .................................................................................. 25

*Eminence Capital, LLC v. Aspeon, Inc.*,
    316 F.3d 1048 (9th Cir. 2003) .............................................................................. 28

*Epstein v. MCA, Inc.*,
    50 F.3d 644 (9th Cir. 1995) .................................................................................. 25

*Erickson v. Wheatley Ventures*,
    No. C-96 2934, 1997 U.S. Dist. LEXIS 4640 (N.D. Cal. Mar. 4, 1997) ......... 24, 25

*Fecht v. Price Co.*,
    70 F.3d 1078 (9th Cir. 1995) ............................................................................. 2, 7

*Field v. Freedman*,
    No. 81-2075-S, 1986 U.S. Dist. LEXIS 22105 (D. Kan. July 30, 1986) .............. 24

*Fla. Commercial Banks v. Culverhouse*,
    772 F.2d 1513 (11th Cir. 1985) ........................................................................... 25

*Gerstle v. Gamble-Skogmo, Inc.*,
    478 F.2d 1281 (2d Cir. 1973) .......................................................................... 13, 27

*Glassman v. Wometco Cable TV, Inc.*,
    No. 7307, 1989 Del. Ch. LEXIS 1 (Del. Ch. Jan. 6, 1989) ....................... 3, 8, 9, 10

*Gould v. American Hawaiian S.S. Co.*,
    331 F. Supp. 981 (D. Del. 1971) ......................................................................... 24

*Gulf Corp. v. Mesa Petroleum Co.*,
    582 F. Supp. 1110 (D. Del. 1984) ................................................................... 3, 26

iii

*Hildes v. Andersen*,
No. 08-cv-0008-BEN (RBB),
2010 U.S. Dist. LEXIS 72086 (S.D. Cal. July 19, 2010) .................................. 18, 19

*Howard v. Everex Sys., Inc.*,
228 F.3d 1057 (9th Cir. 2000) ............................................................... 22

*In re Int'l Rectifier Corp. Sec. Litig.*,
No. CV 07-02544-JFW,
2008 U.S. Dist. LEXIS 106929 (C.D. Cal. Dec. 31, 2008) ................................. 22

*In re JPMorgan Chase & Co. Sec. Litig.*,
MDL No. 1783 – C.A. No. 06 C 4674,
2007 U.S. Dist. LEXIS 93877 (N.D. Ill. Dec. 18, 2007) ..................................... 21

*Kerr v. Exobox Techs. Corp.*,
No. H-10-4221, 2012 U.S. Dist. LEXIS 7523 (S.D. Tex. Jan. 23, 2012) .............. 22

*McCreary v. Celera Corp.*,
No. 11-1618 SC, 2011 WL 1399263 (N.D. Cal. Apr. 13, 2011) ..................... 24, 25

*Mzamane v. Winfrey*,
693 F. Supp. 2d 442 (E.D. Pa. 2010) ........................................................ 20

*In re Nellson Nutraceutical, Inc.*,
No. 06-10072 (CSS), 2007 Bankr. LEXIS 99 (Bankr. D. Del. Jan. 18, 2007) ........ 5

*Novak v. Kasaks*,
216 F.3d 300 (2d Cir. 2000) ................................................................. 17

*Parsons v. Jefferson-Pilot Corp.*,
789 F. Supp. 697 (M.D.N.C. 1992) ......................................................... 14

*Plaine v. McCabe*,
797 F.2d 713 (9th Cir. 1986) ...................................................... 1, 13, 14

*In re Primedia Inc. S'holders Litig.*,
67 A.3d 455 (Del. Ch. 2013) ............................................................ 14, 23

*Pryor v. U.S. Steel Corp.*,
591 F. Supp. 942 (S.D.N.Y. 1984) ..................................................... 11, 12

iv

*In re RAIT Fin. Trust Sec. Litig.*,
   No. 2:07-cv-03148-LDD,
   2008 U.S. Dist. LEXIS 103549 (E.D. Pa. Dec. 22, 2008) ..................................... 16

*Reese v. Malone*,
   747 F.3d 557 (9th Cir. 2014) ................................................... 16, 18, 23

*Rubke v. Capitol Bancorp Ltd.*,
   460 F. Supp. 2d 1124 (N.D. Cal. 2006) ................................................. 11

*S. Ferry LP, #2 v. Killinger*,
   542 F.3d 776 (9th Cir. 2008) ......................................................... 15

*Schlagal v. Learning Tree Int'l*,
   No. CV 98-6384 ABC (Ex),
   1998 U.S. Dist. LEXIS 20306 (C.D. Cal. Dec. 23, 1998).............................. 16, 17

*SEC v. Mozilo*,
   No. CV 09-3994-JFW,
   2009 U.S. Dist. LEXIS 104689 (C.D. Cal. Nov. 3, 2009) ................................ 6, 22

*SEC v. Mozilo*,
   No. CV 09-3994-JFW,
   2010 U.S. Dist. LEXIS 98203 (C.D. Cal. Sept. 16, 2010) ............................ 4, 5, 6

*SEC v. Stansbury Holdings Corp.*,
   No. 06-cv-00088-REB-BNB,
   2007 U.S. Dist. LEXIS 11604 (D. Colo. Feb. 20, 2007)....................................... 19

*Siemers v. Wells Fargo & Co.*,
   No. C 05-04518 WHA,
   2007 U.S. Dist. LEXIS 31287 (N.D. Cal. Apr. 17, 2007)....................................... 18

*Stroud v. Grace*,
   606 A.2d 75 (Del. 1992) ............................................................ 14

*In re TWA, Inc. S'holders Litig.*,
   No. 9844, 1988 Del. Ch. LEXIS 139 (Del. Ch. Oct. 21, 1988) ............................. 6

*In re U.S. Cellular Operating Co.*,
   No. 18696-NC, 2005 Del. Ch. LEXIS 1 (Del. Ch. Jan. 6, 2005) ............................ 5

*In re ValueVision Int'l Inc. Sec. Litig.*,
   896 F. Supp. 434 (E.D. Pa. 1995).......................................................... 7

v

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
   MDL No. 551, 1986 U.S. Dist. LEXIS 19398 (W.D. Wash. Oct. 7, 1986)........... 13

*Washburn v. Madison Square Garden Corp.*,
   340 F. Supp. 504 (S.D.N.Y. 1972) ................................................................24, 25

*Weinberger v. Rio Grande Indus., Inc.*,
   519 A.2d 116 (Del. Ch. 1986) .................................................3, 4, 26, 27

*Wellman v. Dickinson*,
   475 F. Supp. 783 (S.D.N.Y. 1979) ........................................................ 25

*In re Wells Real Estate Inv. Trust, Inc.*,
   No. 1:07-CV-862-CAP,
   2010 U.S. Dist. LEXIS 143057 (N.D. Ga. Aug. 2, 2010) ..................................... 15

*In re Williams Sec. Litig.*,
   339 F. Supp. 2d 1242 (N.D. Okla. 2003) ............................................... 19

*WPP Lux. Gamma Three Sarl v. Spot Runner, Inc.*,
   655 F.3d 1039 (9th Cir. 2011) ............................................................ 17

*Zucco Partners, LLC v. Digimarc Corp.*,
   No. 06-35758, 2009 U.S. App. LEXIS 7025 (9th Cir. Feb. 10, 2009) ............ 15, 16

**Statutes**

15 U.S.C. § 77q(a) .............................................................................. 11, 12

15 U.S.C. § 78j............................................................................................ 13

15 U.S.C. § 78n...............................................................................*passim*

15 U.S.C. § 78t(a) ................................................................................... 28

**Other Authorities**

17 C.F.R. 229.1011(c) ............................................................................. 26

17 C.F.R. 240.14d-101............................................................................ 26

17 C.F.R. 240.10b-5................................................................................ 11

Steven M. Davidoff, *Fairness Opinions*,
   55 Am. U.L. Rev. 1557 (Aug. 2006).................................................... 1, 4, 5

vi

L. Loss, *Fundamentals Of Securities Regulation* (2004) ..................................... 12, 13

Lawrence A. Hamermesh, *Calling Off the Lynch Mob: The Corporate Director's Fiduciary Disclsoure Duty*, 49 Vand. L. Rev. 1087, 1092 n.12 (Oct. 1996) ......... 14

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS 8:15-CV-00554-CJC-JCG

# I.    PRELIMINARY STATEMENT

Defendants[1] misled Emulex shareholders and violated § 14 and § 20 of the Securities Exchange Act of 1934 ("§ 14" and "§ 20") by failing to disclose a material financial analysis, commonly referred to as a "Selected Transactions Analysis" or "Premium Analysis" and referred to here as the "Selected Semiconductor Transactions" Analysis ("SST Analysis"),[2] prepared by the Board's financial advisor Goldman, Sachs & Co. ("Goldman") and presented to the Board the same day it voted to approve a merger agreement with Avago and Merger Sub ("Merger Agreement").   Defendants omitted the SST Analysis from the Schedule 14D-9 Solicitation/Recommendation Statement filed April 7, 2015 ("14D-9")[3] in order to dupe Emulex shareholders and prevent them from knowing that they were receiving $117.1 million less than the median premium obtained in the comparable transactions.[4]   Indeed, the SST Analysis unequivocally shows the premium Emulex

---

[1]    Defendants include Emulex Corporation ("Emulex"), the former members of its board of directors (the "Board" or the "Individual Defendants"), Avago Technologies Wireless (U.S.A.) Manufacturing Inc. ("Avago"), and Avago's wholly owned subsidiary Emerald Merger Sub, Inc. ("Merger Sub").

[2]    A Premium Analysis is one of "[t]he most common and accepted" valuation analyses upon which a fairness opinion can rest, and "compares the premium being paid in the corporate control transaction against historical premiums paid, for selected, similarly-situated companies."  Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1574 n.75, 1575 (Aug. 2006).

[3]    Attached as Exhibit 1 to the Declaration of David E. Bower In Support of Plaintiff's Opposition to Defendants' Motion to Dismiss ("Bower Decl.") filed concurrently herewith.

[4]    Plaintiff's allegations concerning the unfair price of the Merger Consideration and unfair process preceding the consummation of the Transaction cannot "be ignored."  Certain Defs.' Mem. of Points and Authorities in Supp. of Mot. to Dismiss ("Def. MPA") at 3 n.2 (ECF No. 30-1).  Plaintiff's claims concerning unfair price and unfair process are directly relevant to damages, although not presently at issue. *Plaine v. McCabe*, 797 F.2d 713, 721-22 (9th Cir. 1986) ("shareholders can be injured in ways other than by receiving an 'unfair' price for their shares. [although] the issue of fairness is relevant to the issue of damages…").

---

shareholders ultimately received in connection with the tender offer whereby Avago acquired Emulex (the "Tender Offer" or "Transaction")[5] for $8.00 per share in cash (the "Merger Consideration") was drastically below the premiums shareholders of similar companies have received in connection with comparable transactions.[6]

Each of Defendants' arguments in support of their motion to dismiss should be rejected.  First, contrary to Defendants' contention, the information in the SST Analysis was not publicly available.  Rather, the SST Analysis was based on Goldman's subjective judgment, prepared by Goldman after securing an $11.0 million payoff of which 75% was contingent upon the consummation of the Transaction, 14D-9 at 30, and only known about by Goldman and the Defendants.

Second, Defendants' "materiality" argument fails because: i) materiality is a mixed question of law and fact that should not be decided on a motion to dismiss unless information is "so obvious[ly] [immaterial] that reasonable minds could not differ[,]" *Fecht v. Price Co.*, 70 F.3d 1078, 1081 (9th Cir. 1995)[7]; and ii) the SST Analysis is clearly material because a shareholder would undoubtedly find it significant to know "not only what th[e] higher premiums were, but why the Board felt these higher premiums were [purportedly] not appropriate in this case."

---

[5]     Avago commenced the Tender Offer on April 7, 2015, and it expired on May 5, 2015 with only 60.58% of the outstanding shares of Emulex's common stock tendered.  Amended Class Action Complaint for Violation of Sections 14(d)4, 14(e) and 20(a) of the Securities Exchange Act of 1934 and 17 C.F.R. § 240.14d-9 ("AC") ¶ 4 (ECF No. 29).

[6]     The SST Analysis showed that the median premium over the target company's undisturbed stock price for the transactions reviewed was 50.8%, but Emulex shareholders only received a 26.4% premium to Emulex's closing price on the last trading day prior to the date the Transaction was announced; and while the mean premium over the target company's 52-week high price for the transactions Goldman reviewed was 17.6%, Emulex shareholders only received a 4.8% premium based on the Company's 52-week high closing price.  AC ¶ 7.

[7]     All quotations, citations and footnotes are omitted unless otherwise noted.

2

*Glassman v. Wometco Cable TV, Inc.*, No. 7307, 1989 Del. Ch. LEXIS 1, at *15 (Del. Ch. Jan. 6, 1989) (finding omission of selected transactions analysis material).

Third, Defendants' scienter argument fails because: i) Plaintiff need only establish that Defendants acted negligently in order to sustain each of his claims; and ii) even if the Court were to find scienter is required, Plaintiff adequately pled scienter premised upon Defendants' conscious disregard or recklessness in failing to disclose the SST Analysis, as well as a theory that the Individual Defendants[8] were motivated to ensure that the Transaction was completed despite the inadequate premium by their desire to preserve their prospects for future employment.

Fourth, Plaintiff has adequately pled claims under § 14(d)(4) and Rule 14d-9 promulgated thereunder because they give rise to a private right of action and only require a showing that Defendants negligently failed to furnish "additional information… as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading." *Gulf Corp. v. Mesa Petroleum Co.*, 582 F. Supp. 1110, 1120 (D. Del. 1984); *Weinberger v. Rio Grande Indus., Inc.*, 519 A.2d 116, 124 (Del. Ch. 1986).

Finally, Plaintiff's § 20(a) claim is sufficiently pled because it is entirely derivative of his §14(e) and §14(d)(4) claims, which have been adequately pled.

## II.   LEGAL ARGUMENT

### A.   Plaintiff Has Adequately Pled His § 14(e) Claim

#### 1.   Goldman's SST Analysis Was Not Publicly Available

Defendants first contend that Plaintiff's § 14(e) claim fails because the information comprising Goldman's SST Analysis was "publicly known." Def. MPA

---

[8]   The "Individual Defendants" are defined as Bruce C. Edwards ("Edwards"), Jeffrey C. Benck ("Benck"), Gregory S. Clark ("Clark"), Gary J. Daichendt ("Daichendt"), Paul F. Folino ("Folino"), Beatriz V. Infante ("Infante"), John A. Kelley ("Kelley"), Rahul N. Merchant ("Merchant"), Nersi Nazari ("Nazari") and Dean A. Yoost ("Yoost").

3

at 5.    Specifically, Defendants assert that any Emulex shareholder could have "selected [their] **own list** of transactions and compared the premiums [themselves]." *Id*. (emphasis added).    Defendants' argument misses the point; regardless of whether or not a shareholder could have created their "own list of transactions" or that the relevant information may lie somewhere in the "total universe of information available in the public domain," *SEC v. Mozilo*, No. CV 09-3994-JFW (MANx), 2010 U.S. Dist. LEXIS 98203, at *29 (C.D. Cal. Sept. 16, 2010), no shareholder could have replicated Goldman's unique SST Analysis, which analyzed 17 transactions over a 4 year period that were selected by Goldman based upon specific factors it deemed relevant to determine which transactions were appropriate to compare to the Transaction at issue.    AC ¶ 138.    Goldman was paid $11 million for this work, and Emulex shareholders were entitled to know of the SST Analysis before the Tender Offer expired.    Defendants' argument grossly mischaracterizes the highly subjective nature of a Selected Transactions Analysis, and should be rejected by the Court.    *See* Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. at 1574-1578 (noting that valuation analyses including Premium Analysis are "in and of themselves…prone to subjectivity" given the "differences in valuation approach in each application and among institutions as each of them develops their own individual approach.").

The information comprising Goldman's SST Analysis was not "publicly known."    The Board specifically selected Goldman as its financial advisor "because it is an internationally recognized investment banking firm that has substantial experience in transactions similar to the Transaction."    14D-9 at 30.    Indeed, the Board paid Goldman $11 million to render a fairness opinion specifically because of its specialized experience and expertise.    *Id*.    And as stated in the 14D-9, "[t]he preparation of a fairness opinion is a complex process and is not necessarily susceptible to partial analysis…"    *Id*. at 29.    Part of the "complex process" involved having Goldman, using its detailed knowledge about the relevant industry and

financial metrics, select companies and transactions that Goldman, based on its specialized knowledge and unique experience, deemed comparable to Emulex and the Transaction.[9]  AC ¶ 138.

Goldman's selection of the transactions it deemed most relevant for use in its SST Analysis required Goldman to make subjective decisions that Emulex shareholders simply could not replicate, *see* Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. at 1574-1578, nor were they required to.  *See Mozilo*, 2010 U.S. Dist. LEXIS 98203, at *29.   Yet Defendants essentially contend that all Emulex shareholders could have identified the 17 transactions Goldman deemed most comparable and then replicated its analysis, for which it was paid $11 million. Absent telepathic powers, Goldman's rationale for selecting those 17 specific transactions and the financial metrics associated with each transaction were known by only two groups of people – Goldman's analysts and Defendants.  As one court aptly noted in describing the unique work that goes into preparing a Selected Transactions Analysis, the selection of comparable transactions is "subjective" and requires an expert to "exercise[] his judgment…"  *In re Nellson Nutraceutical, Inc.*, No. 06-10072 (CSS), 2007 Bankr. LEXIS 99, at *114-15 (Bankr. D. Del. Jan. 18, 2007); s*ee also In re U.S. Cellular Operating Co.*, No. 18696-NC, 2005 Del. Ch. LEXIS 1, at *73 (Del. Ch. Jan. 6, 2005) (noting the existence of various "methodologies for analyzing comparable transactions…").

---

[9]   Goldman also served as the financial advisor to Volterra Semiconductor Corporation in connection with its merger with Maxim Integrated Products in 2013. The Volterra transaction is one of the transactions listed in Goldman's SST Analysis. AC Exhibit A at ELX 91.  Tellingly, Goldman's Selected Transactions Analysis **was** disclosed in the Recommendation Statement filed in connection with the Volterra transaction.  Bower Decl., Ex. 2 at 28-29.  And the reason for that is clear – unlike here, the premium and multiples observed in connection with the Volterra transaction were actually superior to the medians of the selected transactions.

1    Further, even if a shareholder could have theoretically guessed the 17

2  transactions Goldman used and then attempted to replicate Goldman's SST Analysis

3  by searching for, obtaining, and reviewing various SEC filings and other "publicly

4  available" information concerning each transaction, Def. MPA at 5, this does not alter

5  the materiality analysis. *Mozilo*, 2010 U.S. Dist. LEXIS 98203, at *29 ("omissions

6  by corporate insiders are not rendered immaterial as a matter of law simply because

7  the omitted facts were available to the public elsewhere…the 'total mix' of

8  information does not encompass the total universe of information available in the

9  public domain.  Indeed, a reasonable investor is not required to pore through [SEC

10 filings]…"); *Brewer v. Lincoln Int'l Corp.*, 148 F. Supp. 2d 792, 802 (W.D. Ky.

11 2000) (rejecting argument that availability of information at issue via SEC Edgar

12 database relieved defendants of their duty to disclose the information pursuant to the

13 federal securities laws); *see also In re TWA, Inc. S'holders Litig.*, No. 9844, 1988

14 Del. Ch. LEXIS 139, at *29-30 (Del. Ch. Oct. 21, 1988) ("Nor can I agree that if a

15 fact is material, that a failure to disclose it is necessarily cured by reason that it could

16 be uncovered by an energetic shareholder by reading an SEC filing.").

17              **2.    Goldman's SST Analysis Was Material**

18    Defendants' argument concerning the materiality of Goldman's SST Analysis

19 is replete with misleading rhetoric and weak on legal substance.  As an initial matter,

20 the Court need not, and should not, consider the underlying merits of Defendants'

21 "materiality" argument at this juncture.  It is well settled that "[b]oth the materiality

22 and misleading nature of a misstatement or omission are usually questions for the

23 trier of fact." *SEC v. Mozilo*, No. CV 09-3994-JFW (MANx), 2009 U.S. Dist. LEXIS

24 104689, at *24-25 (C.D. Cal. Nov. 3, 2009) (citing *Fecht*, 70 F.3d at 1081; *TSC

25 Indus., Inc. v. Northway, Inc*., 426 U.S. 438, 450 (1976)) (same).  "Therefore, only if

26 the adequacy of the disclosure or the materiality of the statement is so obvious that

27 reasonable minds could not differ are these issues appropriately resolved as a matter

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS 8:15-CV-00554-CJC-JCG

of law." *Fecht*, 70 F.3d at 1081.  In other words, "[to prevail] [o]n a motion to dismiss…, the defendants must show that under no set of facts will the plaintiff [] be able to establish that the alleged misrepresentations and omissions were material." *In re ValueVision Int'l Inc. Sec. Litig.*, 896 F. Supp. 434, 442 (E.D. Pa. 1995). Defendants cannot meet this high burden here.

However, even if the Court were to consider the merits of Defendants' "materiality" argument, each of Defendants' contentions is wholly meritless. Contrary to Defendants' spin, Plaintiff is not "second-guessing" or "quibbling" with a financial advisor's work; to the contrary, Plaintiff contends that **each** of the material analyses Goldman performed in analyzing the fairness of the Merger Consideration should have been disclosed to Emulex shareholders.  Defendants' decision to cherry-pick the analyses disclosed by omitting the SST Analysis, which showed the inadequacy of the premium paid to Emulex shareholders, was a violation of the federal securities laws.

Defendants' contention that "the list of premiums is not a financial analysis," Def. MPA at 8, is equally meritless and, quite frankly, absurd.  Defendants argue that because a law review article Plaintiff cited in his Complaint identifies the "Discounted Cash Flow Analysis" as perhaps "the most important analysis" underlying a fairness opinion, the SST Analysis suddenly morphs from a "financial analysis" into something else.  *Id.*  Simply put, Goldman's SST Analysis is indisputably a material financial analysis.  The only distinguishing factor between it and the other analyses was that it showed that the Merger Consideration was inadequate, and Defendants thus intentionally decided to exclude it from the 14D-9.[10]

---

[10]     Indeed, Goldman's Selected Transactions Analysis was disclosed in the 14D-9 filed in connection with the Volterra transaction because, unlike here, the premium and multiples observed in connection with the Volterra transaction were actually superior to the medians of the comparable transactions.  Bower Decl., Ex. 2, at 28-29.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS 8:15-CV-00554-CJC-JCG

1    Plaintiff also does not argue that "the entirety of whatever presentations
2    Goldman Sachs prepared for the Board had to be disclosed to shareholders."  Def.
3    MPA at 6.  Rather, Plaintiff's argument is quite focused - Plaintiff argues that the
4    SST Analysis is material and should have been disclosed.  Plaintiff's position is
5    supported by both common sense and legal precedent.

6    A case from the Delaware Court of Chancery, applying the same standard for
7    materiality set forth by the U.S. Supreme Court, is directly on point.  In *Glassman v.*
8    *Wometco Cable TV, Inc.*, former shareholders alleged the company's board breached
9    its duty of disclosure by "**fail[ing] to disclose certain material information in the**
10   **possession of [the company's board] as to recent sales of comparable [cable**
11   **companies].  In particular, plaintiff alleged that there should have been disclosed**
12   **the details of certain comparable sales because they did not compare favorably**
13   **with the price being offered to the [company's] Shareholders and this**
14   **information was necessary to allow the Shareholders to make an informed**
15   **judgment whether to accept the price offered or to seek appraisal.**"  No. 7307,
16   1989 Del. Ch. LEXIS 1, at *2 (Del. Ch. Jan. 6, 1989) (emphasis added).  Just as here,
17   the board received a presentation from its financial expert concerning the fairness of
18   the merger price which included an analysis of other acquisitions of similar
19   companies.  *Id*. at *3.  The court had previously dismissed all of plaintiff's claims
20   **except** the claim that the information statement filed in connection with the merger
21   "failed to disclose the details of comparable sales of cable television systems which
22   were considered by the Board in connection with the proposed merger and the claim
23   that these comparable sales did not compare favorably with the price being offered to
24   Wometco Cable's Stockholders."  *Id*. at *4.  The court, applying the federal
25   materiality standard, *id*. at *8, subsequently denied the defendants' motion for
26   summary judgment.  *Id*. at *15.  The court specifically rejected defendants'
27
28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS 8:15-CV-00554-CJC-JCG

contention that the information concerning the comparable transactions was immaterial, reasoning:

> **If the premiums based upon the cash flow and subscriber multiples paid in some of the unrelated cable television sales were higher than the premium paid in the Wometco cable sale---which they appear to be---, it would seem reasonable to expect that a shareholder might consider this information material and be interested in knowing not only what those higher premiums were, but why the Board felt these higher premiums were not appropriate in this case.** Even if this information is arguably "soft"--which I do not think it is--, in the context of cash-out mergers, Delaware's courts have held that arguably "soft" information, which indicates with some degree of reliability that a corporation was worth more than the tender price, must be publicly disclosed to the shareholders.

*Id.* at *14-15 (emphasis added).  The same conclusion is warranted here.

Defendants further suggest that the SST Analysis, which Goldman specifically decided to include in its final fairness presentation to the Board, actually did not evaluate relevant transactions or companies similar to Emulex.  Def. MPA at 8-9. Defendants attempt to downplay the materiality of the SST Analysis by attacking its utility, and essentially ask the Court to suspend logic and conclude that an analysis that was intentionally included in Goldman's final fairness presentation had no useful purpose whatsoever.   But why would Goldman put an analysis of dissimilar transactions in its final fairness presentation?  The logical answer is it would not. Indeed, Goldman specifically acknowledged that "[i]n connection with rendering [its] [fairness] opinion [] and performing its related financial analyses…[it] reviewed the financial terms of certain recent business combinations in the semiconductor industry and in other industries[.]"   14D-9 at 25-26.   Simply put, bankers do not include useless analyses in their final fairness presentations to corporate boards.  Regardless,

9

1  the similarity of the transactions contained in the SST Analysis is an issue of fact that

2  should not be considered on a motion to dismiss.

3      Finally, Defendants argue that the SST Analysis is immaterial because,

4  according to them, it "shows that the Tender Offer price for Emulex fell within a

5  range of recent premiums," and "does not suggest at all that the Tender Offer price

6  was outside the range of reasonable values."  Def. MPA at 9.  Once again,

7  Defendants' argument misses the mark.  First, as the *Glassman* Court explained,

8  materiality does not turn on whether "the premiums paid in other comparable

9  acquisitions were actually significantly higher than the premium being paid

10 [here]…The issue [] is not what constitutes significantly higher prices, but whether

11 the undisclosed data on the comparables was material."  1989 Del. Ch. LEXIS 1, at

12 *9-10.  Further, the picture painted by the SST Analysis is clear – the premium

13 Emulex shareholders received in connection with the Transaction was significantly

14 below the mean and median premiums obtained in similar transactions in recent

15 years.  AC ¶¶ 7, 140, 141.  Such information is clearly material.  *Glassman*, 1989

16 Del. Ch. LEXIS 1, at *14-15.

17      **3.  Plaintiff Should Not Be Required to Plead Scienter for His § 14(e) Claim**

18

19      Defendants also argue that Plaintiff's § 14(e) claim should be dismissed

20 because Plaintiff has failed to allege scienter.  Def. MPA at 9-13.   As explained

21 below, Plaintiff has adequately pled scienter, *see infra* § II.A.4, although Plaintiff

22 disputes that scienter is required for his § 14(e) claim.  Rather, Plaintiff believes that

23 a § 14(e) claim premised on untrue statements or omissions requires a showing of

24 mere negligence.

25

26

27

28

10

The Ninth Circuit has not directly addressed whether scienter is required under a § 14(e) claim.[11]   *Rubke v. Capitol Bancorp Ltd.*, 460 F. Supp. 2d 1124, 1150 (N.D. Cal. 2006).   However, other courts have recognized "an apparent circuit split regarding the elements of an actionable claim under §14(e). The Ninth Circuit, for example, requires only (1) the misstatement of a material fact (2) in connection with a tender offer.   The Second, Third, and Fifth Circuits further require 'proof of scienter…'"   *In re Celera Corp. S'holder Litig.*, No. 6304-VCP, 2012 Del. Ch. LEXIS 66, at *110 (Del. Ch. Mar. 23, 2012).   And each of the courts that have required scienter for a § 14(e) claim have focused their analysis solely on the similarity between certain portions of § 14(e) and Rule 10b-5.

Specifically, the courts in such cases have emphasized the similarity between the second clause of § 14(e), which prohibits "fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer," and the language in Rule 10b-5 which prohibits "any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person[.]"   15 U.S.C. § 78n(e); 17 C.F.R. 240.10b-5.   This comparison wholly ignores a significant fact – § 14(e) contains **two distinct clauses** – one which tracks Rule 10b-5's language, and another which tracks the substance of Rule 14a-9 and § 17(a)(2) of the 1933 Act.   *Data Probe Acquisition Corp. v. Datatab, Inc.*, 568 F. Supp. 1538, 1557 (S.D.N.Y. 1983) (noting that § 14(e)'s language is "virtually identical to that of Rule 14a-9…");   *Pryor v. U.S. Steel Corp.*, 591 F. Supp. 942, 955 n.19 (S.D.N.Y. 1984) (recognizing that "analogy drawn

---

[11]     Defendants cite two opinions from district courts in the Ninth Circuit which held that scienter is required for a § 14(e) claim.   Def. MPA at 9-10.   But both opinions relied upon opinions from courts outside the Ninth Circuit in support of their conclusion.   Notably, the Ninth Circuit has specifically rejected other circuits' interpretations of § 14(e).   *Rubke v. Capitol Bancorp Ltd.*, 460 F. Supp. 2d 1124, 1131 (N.D. Cal. 2006)  ("While other circuits require that plaintiffs must also prove reliance and causation in connection with a section 14(e) claim, the Ninth Circuit does not appear to require either.").

between Rule 10b-5 and § 14(e) is, with respect to the issue of scienter, somewhat imperfect" in light of similarity of § 14(e) to § 17(a)(2) which does not require scienter).[12]

The first clause of § 14(e) prohibits the use of an untrue statement of a material fact or an omission of any material fact in connection with a tender offer – the conduct Plaintiff alleges here. The language in the first clause of § 14(e) precisely tracks the language of § 17(a)(2),[13] to which the Supreme Court has applied a negligence standard of liability. *Aaron v. SEC*, 446 U.S. 680, 696 (1980); *Pryor*, 591 F. Supp. at 955 n.19; *see also* Bower Decl. Ex. 3 (comparing the text of the relevant Exchange Act provisions). Conversely, the language of the second clause of § 14(e) parallels the language of § 17(a)(1), which the Supreme Court has held requires scienter. *Aaron*, 446 U.S. at 697. Thus, following the Supreme Court's reasoning in *Aaron*, § 14(e) should be interpreted to require only a negligence standard under the first clause and a scienter standard under the second clause.[14] L. Loss, *Fundamentals*

---

[12]    The plain language of this provision proscribes two types of conduct: (1) the making of untrue statements of material fact or the omission of material facts which are necessary to make the statements made not misleading; and (2) engaging in fraudulent, deceptive or manipulative acts or practices.

[13]    *Compare* 15 U.S.C. § 77q(a)(2) (prohibiting use of "untrue statement" or material omission to obtain money or property in connection with offer or sale of securities) with § 78n(e) (prohibiting use of "untrue statement" or material omission in connection with tender offer).

[14]    The Supreme Court's rationale for establishing a dual standard of liability in *Aron* is directly applicable here. There, the Supreme Court explained: "The language of § 17 (a) strongly suggests that Congress contemplated a scienter requirement under § 17 (a)(1), **but not under** § 17 (a)(2) or § 17 (a)(3). The language of § 17 (a)(1), which makes it unlawful 'to employ any device, scheme, or artifice to defraud,' plainly evinces an intent on the part of Congress to proscribe only knowing or intentional misconduct... **By contrast, the language of § 17 (a)(2), which prohibits any person from obtaining money or property 'by means of any untrue statement of a material fact or any omission to state a material fact,' is devoid of any suggestion whatsoever of a scienter requirement**…in sum, [] the language of

---

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS 8:15-CV-00554-CJC-JCG

*Of Securities Regulation* 652 (2004) (Supreme Court's implementation of differing standards of liability under § 17(a) should apply to the two clauses of § 14(e) because of similarities in language);[15] *see also In re Wash. Pub. Power Supply Sys. Sec. Litig.*, MDL No. 551, 1986 U.S. Dist. LEXIS 19398, at *2 (W.D. Wash. Oct. 7, 1986) (noting Supreme Court precedent for assigning differing standards of fault to different subsections of the same federal securities law).

Such an outcome is warranted not only by the statute's text[16] and Supreme Court precedent, but by the legislative intent of § 14(e), which "is to insure that public shareholders who are confronted by a cash tender offer for their stock will not be required to respond without adequate information…"[17]  *Plaine v. McCabe*, 797 F.2d 713, 717 (9th Cir. 1986); *Clearfield Bank & Trust Co. v. Omega Fin. Corp.*, 65 F. Supp. 2d 325, 347 (W.D. Pa. 1999) ("The purpose of the Williams Act is to protect

---

§ 17 (a) requires scienter under § 17 (a)(1), but not under § 17 (a)(2) or § 17 (a)(3). Although the parties have urged the Court to adopt a uniform culpability requirement for the three subparagraphs of § 17 (a), the language of the section is simply not amenable to such an interpretation."  446 U.S. at 695-97 (emphasis added).

[15] A true and correct copy of the relevant pages from this text, which is considered a leading authority on the subject and has been cited by the U.S. Supreme Court and various other courts hundreds of times, is attached as Exhibit 4 to the Bower Decl.

[16] Moreover, § 14(e), unlike § 10(b), is not limited strictly to a scienter standard of liability by a section heading confining the scope of § 14(e) to "manipulative and deceptive" activity.  15 U.S.C. § 78j.

[17] The Second Circuit was persuaded by similar policy considerations in holding that negligence, rather than scienter, is the appropriate standard for a Rule 14a-9 claim, even though "the language of Rule 14a-9(a) closely parallels that of Rule 10b-5."  *Gerstle v. Gamble-Skogmo, Inc.*, 478 F.2d 1281, 1299 (2d Cir. 1973).  The same reasoning applies here, "where the plaintiffs represent the very class who were asked to approve a merger on the basis of a misleading proxy statement and are seeking compensation from the beneficiary who is responsible for the preparation of the statement, [and thus should] not [be] required to establish any evil motive or even reckless disregard of the facts."  *Id*. at 1300-01.

investors by furnishing them with the information needed to make a carefully considered appraisal of the tender offer before them.").  Indeed, the Ninth Circuit has specifically recognized that § 14(a), which only requires a showing of negligence, "is similar in purpose to § 14(e)."  *Plaine*, 797 F.2d at 721.

Under a negligence standard, Plaintiff's claims have been more than sufficiently pled.  Plaintiff alleges that each of the Individual Defendants reviewed the contents of the 14D-9 before it was filed with the SEC, and knew or recklessly disregarded that the SST Analysis was omitted.  AC ¶¶ 151, 154.  Further, if any of the Individual Defendants failed to review the contents of the 14D-9 before it was filed with the SEC, they were reckless in fulfilling their duty of candor, which requires directors "to disclose fully and fairly all material information within the board's control when it seeks shareholder action."  *Stroud v. Grace*, 606 A.2d 75, 84 (Del. 1992); *In re Primedia Inc. S'holders Litig.*, 67 A.3d 455, 491 (Del. Ch. 2013) ("A board has an ongoing obligation to review and update its recommendation.").[18] And "[a]s a matter of law, the preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact is sufficient to satisfy the [] negligence standard…a director may be found negligent under Section 14(a) for a failure to notice material omissions upon reading a proxy statement."  *Brown v. Brewer*, No. CV 06-3731-GHK (SHx), 2010 U.S. Dist. LEXIS 60863, at *81 (C.D. Cal. June 17, 2010).[19]   At the very least, whether or not

---

[18]    *See also* Lawrence A. Hamermesh, *Calling Off the Lynch Mob: The Corporate Director's Fiduciary Disclsoure Duty*, 49 Vand. L. Rev. 1087, 1092 n.12 (Oct. 1996) (noting that "[d]irectors should be particularly attentive to the procedures followed in preparing the corporation's proxy statements and should review them carefully before they are disseminated, to corroborate that there are no material misstatements or omissions.").

[19]    *See also Parsons v. Jefferson-Pilot Corp.*, 789 F. Supp. 697, 703 (M.D.N.C. 1992) (finding "[e]ach of the directors who reviewed the proxy statement" to be negligent for failing to notice language at issue); *In re BankAmerica Corp. Sec. Litig.*, 78 F. Supp. 2d 976, 994 (E.D. Mo. 1999) ("Plaintiffs allege that the proxy statement

Defendants were negligent is a question of fact that cannot be resolved on the present motion. *In re Wells Real Estate Inv. Trust, Inc.*, No. 1:07-CV-862-CAP, 2010 U.S. Dist. LEXIS 143057, at *18 (N.D. Ga. Aug. 2, 2010) ("[I]t is undisputed that the defendants made a decision to omit information…from the Proxy…Whether this decision amounts to negligence turns on whether or not this choice was reasonable in light of the totality of the circumstances; this result is in turn dependent on whether the alleged omissions were material. As set forth above, there remains a question of fact as to [] materiality…Therefore, there remains a question of fact as to negligence.").

### 4.    **Plaintiff Has Adequately Pled Scienter Regardless**

#### i.    **The Scienter Pleading Requirement**

Even if the Court finds that Plaintiff must plead scienter, he has done so here. "To adequately demonstrate that the defendant acted with the required state of mind, a complaint must allege that the defendants made false or misleading statements either intentionally or with deliberate recklessness." *Zucco Partners, LLC v. Digimarc Corp.*, No. 06-35758, 2009 U.S. App. LEXIS 7025, at *15-16 (9th Cir. Feb. 10, 2009). "[R]eckless conduct can [] meet this standard to the extent that it reflects some degree of intentional or conscious misconduct…" *S. Ferry LP, #2 v. Killinger*, 542 F.3d 776, 782 (9th Cir. 2008). "In assessing the allegations holistically as required by [the Supreme Court in] *Tellabs*, the federal courts certainly need not close their eyes to circumstances that are probative of scienter viewed with a practical and common-sense perspective." *Id.* at 784. "**An actor is deliberately reckless if he had reasonable grounds to believe material facts existed that were misstated or omitted, but nonetheless failed to obtain and disclose such facts although he**

---

was knowingly drafted with material omissions which would more than comply with the negligence standard.").

15

1   **could have done so without extraordinary effort**.”  *Reese v. Malone*, 747 F.3d 557,

2   569 (9th Cir. 2014) (emphasis added).

3        The Ninth Circuit has also recognized that a plaintiff may make “different

4   types of scienter allegations,” and different “set[s] of rules” are applied to analyze

5   each type.  *Zucco*, 2009 U.S. App. LEXIS 7025, at *17.  Defendants’ Motion to

6   Dismiss focuses **solely on one type** – “motive and opportunity to commit fraud”

7   allegations.  Def. MPA at 9-13 (focusing solely on what Defendants characterize as

8   Plaintiff’s “theory that every member of the Board was willing to accept a lowball

9   tender offer for Emulex to avoid the embarrassment of losing their seats on the

10  Board…”).  However, “motive is not a required element of scienter…[as] [s]cienter

11  can be established through contemporaneous information or data available to the

12  defendants that contradicts their public statements.”  *In re BP Prudhoe Bay Royalty*

13  *Trust Sec. Litig.*, No. C06-1505 MJP, 2007 U.S. Dist. LEXIS 83007, at *9 (W.D.

14  Wash. Oct. 26, 2007); *In re RAIT Fin. Trust Sec. Litig.*, No. 2:07-cv-03148-LDD,

15  2008 U.S. Dist. LEXIS 103549, at *44-45 (E.D. Pa. Dec. 22, 2008) (“Because we

16  find that Plaintiffs have adequately plead a strong inference of scienter through

17  conscious disregard or recklessness, we need not address Plaintiffs’ motive and

18  opportunity allegations.”).

19       Here, Plaintiff has satisfied the scienter requirement by sufficiently pleading

20  three different types of scienter allegations, including one type premised on a “motive

21  [and opportunity] to commit fraud” and two types premised on “circumstantial

22  evidence of either reckless or conscious behavior.”  *Schlagal v. Learning Tree Int’l*,

23  No. CV 98-6384 ABC (Ex), 1998 U.S. Dist. LEXIS 20306, at *43 (C.D. Cal. Dec.

24  23, 1998) (“a plaintiff [may] satisfy the strong inference test in two distinct ways

25  without direct knowledge of the defendant’s state of mind: The first approach is to

26  allege facts establishing a motive to commit fraud and an opportunity to do so.  The

27  second approach is to allege facts constituting circumstantial evidence of either

28

16

PLAINTIFF’S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS’
MOTION TO DISMISS 8:15-CV-00554-CJC-JCG

1    reckless or conscious behavior."); *WPP Lux. Gamma Three Sarl v. Spot Runner, Inc.*,

2    655 F.3d 1039, 1051 (9th Cir. 2011) (scienter may be premised on "reckless conduct

3    to the extent that it reflects some degree of intentional or conscious misconduct, or

4    what we have called deliberate recklessness.").

5            **ii.**     **Plaintiff Has Pled Scienter by Alleging that Defendants Made Misleading Statements and Omissions Despite**

6                           **Having Access to Contradictory Information**

7          "[A] plaintiff may [] plead scienter by alleging that a defendant made

8    misleading statements or omissions despite the defendant's likely 'access' to

9    contradictory information." *In re Amgen Inc. Sec. Litig.*, No. CV 07-2536 PSG

10   (PLAx), 2014 U.S. Dist. LEXIS 183034, at *28 (C.D. Cal. Aug. 4, 2014); *Berson v.*

11   *Applied Signal Tech., Inc.*, 527 F.3d 982, 987-89 (9th Cir. 2008) (holding plaintiff

12   adequately pled scienter where he alleged that defendants were aware of the material

13   information that rendered statements made in various SEC filings and press releases

14   misleading); *Schlagel*, 1998 U.S. Dist. LEXIS 20306, at *54 (scienter requirement

15   satisfied where defendants concealed certain adverse facts concerning company's

16   performance while making contradictory glowing public statements where defendants

17   "had knowledge of the critical adverse information"). "[S]ecurities fraud claims

18   typically have sufficed to state a claim based on recklessness when they have

19   specifically alleged defendants' knowledge of facts or access to information

20   contradicting their public statements. Under such circumstances, defendants knew or,

21   more importantly, should have known that they were misrepresenting material facts

22   related to the corporation." *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000).

23         Here, Plaintiff alleges that despite access to Goldman's SST Analysis and

24   knowledge that the premium obtained in the Transaction was significantly below the

25   premiums obtained in comparable transactions, AC ¶ 7, Defendants, via the 14D-9,

26   falsely and misleadingly touted that the premium was significant and supported the

27   Board's recommendation that Emulex shareholders tender their shares in the Tender

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS 8:15-CV-00554-CJC-JCG

1   Offer.  AC ¶¶ 8, 146-48.  These allegations are sufficient to establish scienter.  *See*

2   *Siemers v. Wells Fargo & Co.*, No. C 05-04518 WHA, 2007 U.S. Dist. LEXIS 31287,

3   at *37 (N.D. Cal. Apr. 17, 2007) (scienter satisfied where defendants could easily see

4   that material information "was not fairly disclosed in the prospectus."); *Reese*, 747

5   F.3d at 579-580 (scienter satisfied with respect to statements contained in Annual

6   Report "not attributed to a particular individual" where management was undoubtedly

7   aware of material contradictory information and certain language in Annual Report

8   appeared to be made to downplay such information).

9            **iii.    Defendants Knew of the SST Analysis, and Knew that**
10                      **Failure to Reveal It Would Likely Mislead Emulex**
                        **Shareholders**

11           Plaintiff has also adequately pled scienter by alleging that "(1) the defendant[s]

12   knew of the potentially material fact, and (2) the defendant[s] knew that failure to

13   reveal the potentially material fact would likely mislead investors."  *City of Phila. v.*

14   *Fleming Cos.*, 264 F.3d 1245, 1261 (10th Cir. 2001) (holding this standard applies to

15   "establish scienter in a securities fraud case alleging non-disclosure of potentially

16   material facts."); *Hildes v. Andersen*, No. 08-cv-0008-BEN (RBB), 2010 U.S. Dist.

17   LEXIS 72086, at *26-27 (S.D. Cal. July 19, 2010) (same).  "The requirement of

18   knowledge in this context may be satisfied under a recklessness standard by the

19   defendant's knowledge of a fact that was so obviously material that the defendant

20   must have been aware both of its materiality and that its non-disclosure would likely

21   mislead investors."  *City of Phila.*, 2010 U.S. Dist. LEXIS 72086, at *1261.  Here,

22   Plaintiff has satisfied both requirements.

23           First, Plaintiff alleges that each of the Individual Defendants, and thus Emulex,

24   knew of Goldman's SST Analysis.  Indeed, the SST Analysis was contained in the

25   presentation Goldman made to the Board on February 25, 2015, and it is thus clear

26   that each of the Individual Defendants knew of this "potentially material fact."  AC

27   ¶¶ 8, 103, 139, 142, 144, 151, 153, 154.  Second, Plaintiff has adequately alleged that

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS 8:15-CV-00554-CJC-JCG

the SST Analysis "was so obviously material that the defendant[s] must have been aware of both its materiality and that its non-disclosure would likely mislead investors."  *See City of Phila.*, 2010 U.S. Dist. LEXIS 72086, at *1261; *In re Williams Sec. Litig.*, 339 F. Supp. 2d 1242, 1259 (N.D. Okla. 2003) ("the recklessness standard is met because the Williams Defendants, WMB, its senior management, and directors, were in a position to know this information, understand its materiality, and realize that failure to provide complete and accurate information with regard to these subjects would likely mislead investors.").[20]  Plaintiff has therefore adequately pled scienter under this standard as well.

### iv.    The Individual Defendants Had A Motive and Opportunity to Commit Fraud

Although motive is not required, Plaintiff has also adequately pled scienter by alleging that the Individual Defendants had a "motive and opportunity" to ensure that the Transaction was consummated despite the inadequate premium.  Defendants' motive is straightforward and well-pled – the Board had been consistently criticized for poor performance, and powerful activist hedge funds threatened to remove the Individual Defendants if they did not quickly improve Emulex's operations or sell the Company.  AC ¶¶ 60-74, 126.  Thus, at least a majority of the Individual Defendants knew they were going to lose their directorships with Emulex, AC ¶¶ 65, 71 – the only question was whether they were going to be kicked off via a proxy contest with

---

[20]    *See also City of Pontiac Gen. Emps.' Ret. Sys. v. Wal-Mart Stores, Inc.*, No. 12-CV-5162, 2014 U.S. Dist. LEXIS 136165, at *11 (W.D. Ark. Sept. 26, 2014) (scienter allegations sufficient where "[t]he inference that Defendants intentionally omitted certain information is just as strong, if not stronger, than any competing plausible inference."); *SEC v. Stansbury Holdings Corp.*, No. 06-cv-00088-REB-BNB, 2007 U.S. Dist. LEXIS 11604, at *8 (D. Colo. Feb. 20, 2007)  ("allegations indicating that Coffman knew of facts that indicated that Stansbury's key assets were worth much less than reported are sufficient to support the SEC's allegations of Coffman's scienter.").

19

the activist investors, or walk away under the guise of successfully selling the Company.  AC ¶ 126.

Defendants' dismissal of Plaintiff's "motive" allegations ignores a critical reality – securing a new job is much easier when you can tout accolades for selling a company rather than when you've been fired for poor performance.[21]  Plaintiff's allegations that the Individual Defendants wanted to "avoid the 'embarrassment' of being removed" thus make perfect sense.  Def. MPA at 11.  By way of example, Individual Defendant Benck's LinkedIn profile currently touts that he was a former director of Emulex, and "[w]orked with Avago to negotiate offer and definitive agreement to acquire company for more than $600M in cash, a 26% premium over current stock price and 55% premium over the 52 week low."  Bower Decl., Ex. 5.  Individual Defendant Beatriz V. Infante's LinkedIn profile similarly touts that she is a "ten-time board director with proven track record of successfully leading businesses to growth, profitability and shareholder return…"  Bower Decl., Ex. 5.  Simply put, "[a]n individual's interest in her reputation…[is] a valuable asset in one's business or profession." *Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 471 (E.D. Pa. 2010).

Here, the Individual Defendants sought to protect their reputations by ensuring that the Transaction was finalized rather than being kicked off the Board.  Courts have recognized that allegations concerning a corporate officer's desire to "guild his reputation" and "increase his prestige" are "important considerations" in analyzing

---

[21]   Plaintiff's allegations concerning the Individual Defendants' holdings simply illustrate that they were able to reap some personal financial gain from the Transaction and leave their jobs without being kicked off the Board for poor performance.  AC ¶ 133.  Indeed, "certain of the Individual Defendants purchased significant amounts of Emulex common stock at prices well below the Merger Consideration during the months preceding the announcement of the Transaction, knowing that a sale of the Company was imminent and that they would be able to obtain a quick, easy premium on their investment within a few months' time."  AC ¶ 124.

20

scienter.  *In re JPMorgan Chase & Co. Sec. Litig.*, MDL No. 1783 – C.A. No. 06 C 4674, 2007 U.S. Dist. LEXIS 93877, at *24-25 (N.D. Ill. Dec. 18, 2007).   The *JPMorgan Chase* Court specifically found that such "reputation" based motive allegations, when combined with allegations that a corporate board approved an unfair merger exchange ratio, "suggest a strong inference of a fraudulent state of mind, sufficient to satisfy the PSLRA pleading requirements…"  *Id*. at *27-28.

Plaintiff has also adequately pled that one of the Individual Defendants, Gregory S. Clark ("Clark"), had a motive to support the Transaction despite the inadequate premium because he represented the interests of hedge fund Elliot Associates, L.P. ("Elliott").  AC ¶ 62.  Elliot's and thus Clark's interests were not aligned with Emulex's other public shareholders because it acquired a significant portion of its Emulex shares below the Merger Consideration, and its primary goal was to quickly return cash to its investors rather than invest in Emulex long-term. AC ¶ 72.

Defendants also argue that the "two-year time lapse between activist pressure and the Tender Offer strongly suggests that the directors were willing to wait for the best offer, irrespective of alleged pressure."  Def. MPA at 12.  Defendants ignore the fact that the Board retained Goldman to conduct a sale process in May 2013, AC ¶74, commensurate with the time it received a letter from Altan Capital which stated that Altan intended to seek "wholesale change at the Board level" and specifically suggested replacing the six directors who had rejected a previous bid to acquire Emulex for $11 per share.  AC ¶ 65.  The Board was not "willing to wait for the best offer," Def. MPA at 12, nor was it willing to implement changes at the Board level to enable the Company to reach its potential.  Rather, the Board hoped to find a bidder that would present a passably acceptable offer as quickly as possible, and when Avago emerged as that bidder, it rushed to finalize a deal.  AC ¶ 104.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS 8:15-CV-00554-CJC-JCG

1    In sum, while "motive is not a required element of scienter," *In re BP Prudhoe*,

2    2007 U.S. Dist. LEXIS 83007, at *9, Plaintiff's motive-based allegations are

3    sufficient to establish the Individual Defendants' scienter.

4             **v.      Plaintiff's     Scienter      Allegations      Are      Sufficiently**

5                  **Individualized**

6    Plaintiff's allegations are sufficient to establish scienter and liability with

7    respect to each of the named Defendants.   First, Individual Defendant Benck,

8    Emulex's former President, CEO, and director, signed the 14D-9 and attested that he

9    made due inquiry concerning the information set forth therein.   14D-9 at 48; AC ¶

10   151.   Benck is therefore liable for the material omission of the SST Analysis from the

11   14D-9.   *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1061 (9th Cir. 2000) (holding

12   signers of SEC documents responsible for the statements they sign); *SEC v. Mozilo*,

13   No. CV 09-3994-JFW (MANx), 2009 U.S. Dist. LEXIS 104689, at *41 (C.D. Cal.

14   Nov. 3, 2009) (same).   Benck, along with Emulex's Chief Financial Officer, was also

15   delegated with responsibility for filing, furnishing, and providing the 14D-9 to the

16   SEC.

17   Emulex is liable under a theory of "corporate scienter."   *In re Int'l Rectifier*

18   *Corp. Sec. Litig.*, No. CV 07-02544-JFW (WBKx), 2008 U.S. Dist. LEXIS 106929,

19   at *27-28 (C.D. Cal. Dec. 31, 2008) (scienter adequately pled as to corporation where

20   adequately pled to CEO under theory of corporate scienter) (citing *Nordstrom, Inc. v.*

21   *Chubb & Son, Inc.*, 54 F.3d 1424, 1435-36 (9th Cir. 1995)).   Emulex is also liable

22   because it is identified as the "Filing Person" in the 14D-9.   14D-9 at 1; *Kerr v.*

23   *Exobox Techs. Corp.*, No. H-10-4221, 2012 U.S. Dist. LEXIS 7523, at *39 (S.D. Tex.

24   Jan. 23, 2012) (corporation "listed as the 'filer'" of the documents at issue liable).

25   The Remaining Individual Defendants (Edwards, Clark, Diachendt, Folino,

26   Infante, Kelley, Merchant, Nazari and Yoost) are also liable.   Defendants contend that

27   Plaintiff has not explained how these "nine Individual Defendants were involved in

28

22

the preparation of the document." Def. MPA at 13. But Plaintiff needs not do so in order to establish scienter or liability against these Individual Defendants here. As noted above, to plead scienter with regard to these Defendants, Plaintiff need only establish that they were "deliberately reckless," i.e. that they "had reasonable grounds to believe material facts existed that were misstated or omitted, but nonetheless failed to obtain and disclose such facts although [they] could have done so without extraordinary effort." *Reese*, 747 F.3d at 569. Plaintiff has done so here, by alleging that each of the Individual Defendants were present at the February 25 meeting when Goldman presented its SST Analysis, and thus knew that this "material fact[] existed." AC ¶ 154 (the Board minutes Plaintiff has obtained confirm that each of the directors was present). Plaintiff has also alleged that each of the Individual Defendants knew that the SST Analysis was omitted from the 14D-9, because they at the very least, "reviewed the contents of the Recommendation Statement before it was filed with the SEC," AC ¶¶ 151, 157, 159, which they were required to do in order to comply with their fiduciary duty of candor. *Primedia*, 67 A.3d at 491. Thus, these Individual Defendants "knew or recklessly disregarded that the Recommendation Statement failed to disclose material facts…" AC ¶ 158. These allegations are more than sufficient to deny the Motion to Dismiss with respect to each of the Individual Defendants. *See Brown v. China Integrated Energy, Inc.,* No. CV 11-2559 MMM, 2013 U.S. Dist. LEXIS 90279, at *32 (C.D. Cal. Apr. 22, 2013) ("the Ninth Circuit held that plaintiffs had adequately alleged that a company's outside directors acted with scienter, where they alleged the directors' attendance at board meetings and their membership on the company's compensation committee and executive committee.") (citing *No. 84 Employer-Teamster Jt. Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 942-43 (9th Cir. 2003) (scienter satisfied as to outside directors concerning **statements made by officers** where

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS 8:15-CV-00554-CJC-JCG

plaintiff relied on inference that outside directors must have known about contradictory information)).

Finally, Avago and Merger Sub[22] may be held liable for the false, materially incomplete and misleading statements in the 14D-9. *See Field v. Freedman*, No. 81-2075-S, 1986 U.S. Dist. LEXIS 22105, at *5-6 (D. Kan. July 30, 1986) (denying acquiring corporation's motion for summary judgment where there were material issues of fact as to its participation in preparing the proxy statement). Indeed, the Merger Agreement specifically granted Merger Sub and Avago the right to review the 14D-9 before it was filed with the SEC, correct false or misleading information in the 14D-9, and furnish information for inclusion in the 14D-9. Merger Agreement §§ 1.2, 3.24, 4.6, Bower Decl., Ex. 6.

## B.   Plaintiff Has Adequately Pled His § 14(d)(4) and Rule 14d-9 Claim

Defendants cite to *Dixon v. Cost Plus*, No. 12-CV-02721-LHK, 2012 WL 2499931, at *6 n.2 (N.D. Cal. June 27, 2012) and *McCreary v. Celera Corp.*, No. 11-1618 SC, 2011 WL 1399263, at *3 n.1 (N.D. Cal. Apr. 13, 2011) to argue that § 14(d)(4) does not give rise to a private right of action. Def. MPA at 13. But the *Dixon* and *McCreary* Courts both erroneously relied upon *Erickson v. Wheatley Ventures*, No. C-96 2934, 1997 U.S. Dist. LEXIS 4640, at *5 (N.D. Cal. Mar. 4, 1997) and *Washburn v. Madison Square Garden Corp.*, 340 F. Supp. 504, 508 (S.D.N.Y. 1972), neither of which support the proposition that § 14(d)(4) does not provide a private right of action. *Erickson* simply held that a group of noteholders did not have standing to bring a claim under § 14(d) because, unlike shareholders of a

---

[22]   Emulex, as the surviving corporation, is liable for Merger Sub's violations of law. *Gould v. American Hawaiian S.S. Co.*, 331 F. Supp. 981, 998 (D. Del. 1971) ("Reynolds is the surviving corporation after the merger with McLean. As such, it possesses all rights and powers of McLean, as well as all liabilities and duties. Since McLean as issuer of the proxy statement is liable for any material misrepresentation, Reynolds as successor is also liable.").

24

target corporation, they "were not intended beneficiaries of the Williams Act." 1997 U.S. Dist. LEXIS 4640, at *18-19. Similarly, in *Washburn,* the court found that a plaintiff who "does not claim to have been solicited in connection with a tender offer, nor to have been damaged by defendants' alleged failure to file the requisite information and therefore has no personal claim." 340 F. Supp. at 508.

Thus, both the *Dixon* and *McCreary* Courts erroneously cited and/or misunderstood the cases they relied upon. This Court should end the string of mistaken citations to cases which do not support the proposition cited, i.e., that shareholders of a target corporation do not have a cause of action under § 14(d)(4). Indeed, courts that have properly analyzed the statute and relevant case law have correctly held that "both the class [of target company shareholders] and individual plaintiffs have standing to bring an action for Section 14(d) and 14(e) violations." *Wellman v. Dickinson*, 475 F. Supp. 783, 817 (S.D.N.Y. 1979); *see also Elec. Specialty Co. v. Int'l Controls Corp.*, 409 F.2d 937, 946 (2d Cir. 1969) (nontendering shareholder has standing under § 14(d)). Further, the Ninth Circuit and other courts have expressly found that the various subsections of § 14(d) create a private right of action. *Epstein v. MCA, Inc.*, 50 F.3d 644, 649-52 (9th Cir. 1995), *reversed on other grounds by Matsushita Elec. Indus. v. Epstein*, 516 U.S. 367 (1996) (§ 14(d)(7) creates private right of action).[23]

Accordingly, § 14(d)(4) and Rule 14d-9 provide for a private cause of action, which Plaintiff has adequately pled. Section 14(d)(4) provides:

> (4) Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe

---

[23]    *See also Fla. Commercial Banks v. Culverhouse*, 772 F.2d 1513, 1518 (11th Cir. 1985) (§ 14(d) creates private right of action even though it does not explicitly provide for one because "Congress intended the Williams Act to create private rights of action on behalf of target corporations.").

as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78n(d)(4).  Pursuant to this authority, the SEC adopted Rule 14d-9, which provides, in part:

> (c) Information required in solicitation or recommendation. Any solicitation or recommendation to holders of a class of securities referred to in section 14(d) (1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation **and the information required by Items** 1 [through] **8 of Schedule 14D-9** (§ 240.14d-101) or a fair and adequate summary thereof:  Provided, however, That such solicitation or recommendation may omit any of such information previously furnished to security holders of such class of securities by such person with respect to such tender offer.

*Gulf Corp. v. Mesa Petroleum Co.*, 582 F. Supp. 1110, 1117 (D. Del. 1984) (quoting 17 C.F.R. § 240.14d-9).

Item 8 required Defendants to "[f]urnish the information required by Item 1011(b) and (c) of Regulation M-A (§ 229.1011 of this chapter)," 17 C.F.R.  240.14d-101, which in turn required Defendants to "[f]urnish such additional material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."  17 C.F.R. 229.1011(c); *Gulf Corp.*, 582 F. Supp. at 1120; *Weinberger v. Rio Grande Indus., Inc.*, 519 A.2d 116, 124 (Del. Ch. 1986).  In other words, "Item 8 does call for [disclosure of] such additional information as may be necessary to make the disclosures required by the other Items not materially misleading."  *Weinberger*, 519 A.2d at 124-25.

For the reasons set forth above, Defendants' failure to disclose the SST Analysis rendered the 14D-9 materially misleading, particularly the information in

"Item 4" concerning the Board's "Reasons for the Recommendation," which touted the "premium to market price," and the "Opinion of the Financial Advisor to the Emulex Board," i.e., Goldman, which stated that Goldman concluded that the "Merger Agreement was fair from a financial point of view" to Emulex shareholders based upon, among other things, its "review[] [of] the financial terms of certain recent business combinations in the semiconductor industry and in other industries[.]" 14D-9 at 22-23, 25-26; *see* AC ¶¶ 8, 148; *see also Weinberger*, 519 A.2d at 125 (noting that failure to disclose arguably material information about impact of business related proceedings was "at least in a *prima facie* sense, 'material'" because disclosure was necessary in order to make information required by Item 4 not materially misleading).

Further, Defendants misconstrue Plaintiff's claim under § 14(d)(4) as being "entirely derivative" of his § 14(e) claim.   Def. MPA at 13.[24]   While Plaintiff's § 14(d)(4)/Rule 14d-9 claim is premised on the same material omission as his § 14(e) claim, even if the Court finds that scienter is required for his § 14(e) claim, his claim under § 14(d)(4) should only require a showing of negligence.   *See Gerstle v. Gamble-Skogmo, Inc.*, 478 F.2d 1281, 1298-01 (2d Cir. 1973).   In *Gertsle*, the court held that Rule 14a-9 only requires a showing of negligence because while "many 10b-5 cases relate to statements issued by corporations, without legal obligation to do so," Rule 14a-9 only applies to "proxy statement[s] required by the Proxy Rules," and because unlike Rule 10b-5, Rule 14a-9 does not contain the "evil-sounding" "manipulative or deceptive device or contrivance" language.   478 F.2d at 1299-300. The same reasoning warrants applying a negligence standard to Plaintiff's § 14(d)(4)/Rule 14d-9 claim, which like Rule 14a-9 addresses a filing required by SEC

---

[24]   Plaintiff's claims under Rule 14d-9 and § 14(d)(4) are predicated on each other.  Although Defendants do not specifically address Plaintiff's claim under Rule 14d-9, Plaintiff interprets Defendants' argument to be that his Rule 14d-9 claim fails for the same reasons his § 14(d)(4) and § 14(e) claims purportedly fail.

1  rules and does not contain the "manipulative or deceptive device" language.

2      **C.  Plaintiff Has Adequately Pled His § 20(a) Claim**

3      Section 20(a) provides that "[e]very person who, directly or indirectly, controls

4  any person liable under any provision of this [chapter] or of any rule or regulation

5  thereunder shall also be liable jointly and severally with and to the same extent as

6  such controlled person to any person to whom such controlled person is

7  liable…,  unless the controlling person acted in good faith and did not directly or

8  indirectly induce the act or acts constituting the violation or cause of action."  15

9  U.S.C. § 78t(a).  Because Defendants challenge this count "on the sole basis that

10  Plaintiff has failed to plead any underlying violation of the securities laws," *Brown v.*

11  *Brewer*, No. CV 06-3731-GHK (JTLx), 2008 U.S. Dist. LEXIS 108904, at *23 (C.D.

12  Cal. July 14, 2008), Def. MPA at 13, and because Plaintiff has adequately pled a

13  violation of § 14(e), § 14(d)(4) and Rule 14d-9, Defendants' motion as to Plaintiff's §

14  20(a) claim must also be denied.  *Id.*

15  **III.  CONCLUSION**

16      For the foregoing reasons, Defendants' motion to dismiss should be denied.

17  However, in the event the Court dismisses any of Plaintiff's claims, Plaintiff

18  respectfully requests leave to amend his complaint, which should be "freely given."

19  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (leave to

20  amend should be freely granted in PSLRA cases where "the drafting of a cognizable

21  complaint can be a matter of trial and error").

22  Dated:  November 13, 2015

23                    **FARUQI & FARUQI, LLP**

24                    */s/ David E. Bower*

25                    David E. Bower

26                    10866 Wilshire Boulevard, Suite 1470
                  Los Angeles, CA 90024

27                    Telephone: (424) 256-2884
                  Facsimile:  (424) 256-2885

28                         28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Email: dbower@faruqilaw.com

*Attorneys for Lead Plaintiff and Lead Counsel for the Putative Class*

**OF COUNSEL:**
**FARUQI & FARUQI, LLP**
Juan E. Monteverde
Miles D. Schreiner
369 Lexington Avenue, 10th Fl.
New York, NY 10017
Tel.: (212) 983-9330
Fax: (212) 983-9331
Email: jmonteverde@faruqilaw.com
          mschreiner@faruqilaw.com

*Attorneys for Lead Plaintiff and*
*Lead Counsel for the Putative Class*

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS 8:15-CV-00554-CJC-JCG

# <u>CERTIFICATE OF SERVICE</u>

1

2   I hereby certify that on November 13, 2015, I electronically filed the foregoing

3   with the Clerk of the Court using the CM/ECF system, which will send notification of

4   such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I

5   hereby certify that I have e-mailed the foregoing document to the non-CM/ECF

6   participants indicated on the Manual Notice List.

7   Dated: November 13, 2015                          */s/ David E. Bower*

8                                                      David E. Bower

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

30