UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

|  |  |
|---|---|
| GARY VARJABEDIAN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EMULEX CORPORATION, et al.,<br><br>Defendants. | Case No.: SACV 15-00554-CJC(JCGx)<br><br>ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS [Dkts. 85, 86] |

## I. INTRODUCTION

Plaintiff Jerry Mutza brings this putative securities class action against Defendants Emulex Corporation ("Emulex"), Emerald Merger Sub, Inc. ("Merger Sub"), and ten

former members of Emulex's Board and management (the "Individual Defendants").[1] Merger Sub is a subsidiary of former Defendant Avago Technologies Wireless (U.S.A.) Manufacturing, Inc. ("Avago"), which Plaintiff voluntarily dismissed from this action. (*See* Dkt. 84.)  This case arises out of the merger between Emulex and Avago in 2015.

In January 2016, the Court granted Defendants' motion to dismiss for failure to state a claim and dismissed all of Plaintiff's claims with prejudice.  (Dkt. 52 [hereinafter "2016 Order"].)  The Ninth Circuit affirmed in part, reversed in part, and remanded. *Varjabedian v. Emulex Corp.*, 888 F.3d 399 (9th Cir. 2018), *cert. dismissed as improvidently granted*, 139 S. Ct. 1407 (2019).  Now before the Court are Emulex and the Individual Defendants' separate motions to dismiss the operative First Amended Complaint ("FAC").  (Dkt. 85 [Emulex's Motion to Dismiss, hereinafter "Emulex Mot."]; Dkt. 86 [Individual Defendants' Motion to Dismiss]; Dkt. 86-1 [Memorandum in Support of Individual Defendants' Motion to Dismiss, hereinafter "Board Mot."].)  The Individual Defendants have also moved to join Emulex's motion to dismiss.  (Dkt. 87.) For the following reasons, Defendants' motions to dismiss are **GRANTED** and the FAC is **DISMISSED WITH PREJUDICE**.

## II.  BACKGROUND

### A.    Factual Background

Emulex was a California-based corporation that sold storage adapters, network interface cards, data management software, and networking services for data centers.

---

[1] The initial complaint was filed by Gary Varjabedian, but the Court subsequently appointed Jerry Mutza as Lead Plaintiff.  (Dkt. 22.)  For consistency, the case caption still identifies Varjabedian as Plaintiff. Mutza and Varjabedian represent the same class of Emulex shareholders and are represented by the same counsel.  The Individual Defendants are Jeffrey Benck, Gregory Clark, Gary Daichendt, Bruce Edwards, Paul Folino, Beatriz Infante, John Kelley, Rahul Merchant, Nersi Nazari, and Dean Yoost.

(Dkt. 29 [First Amended Complaint, hereinafter "FAC"] ¶ 14.)  In the fall of 2012, hedge-fund shareholders allegedly began pressuring the Emulex Board to sell the company.  (*Id.* ¶¶ 60–72.)  According to Plaintiff, this pressure led the Board to rush through a poorly executed sale process, "during which the goal was to sell the Company to the first bidder that presented anything close to a justifiably acceptable bid."  (*Id.* ¶ 104.)  On February 25, 2015, Emulex finalized a Merger Agreement with Avago.  (*Id.* ¶¶ 93–103.)  Pursuant to the terms of the Agreement, Avago's subsidiary, Merger Sub, initiated a tender offer for Emulex's outstanding stock at $8.00 per share, which was a 26.4% premium on Emulex's "undisturbed stock price"—the stock price the day before the merger was announced.  (*Id.* ¶¶ 4–7, 52–53.)

Prior to the merger, Emulex retained its financial advisor, Goldman Sachs ("Goldman"), to determine whether the proposed merger agreement and $8.00 tender offer were fair to shareholders.  (*Id.* ¶¶ 94–103, 138–143.)  Goldman determined that both were fair and presented several financial analyses to the Board that supported its position.  (*Id.*)  On April 7, 2015, the day Merger Sub issued the tender offer, Emulex filed a 48-page Recommendation Statement with the Securities and Exchange Commission ("SEC") pursuant to 17 C.F.R. § 240.14d-101, Schedule 14D-9.  (*See* Dkt. 31 Exh. A [hereinafter "Recommendation Statement"].)[2]  Based in part on Goldman's fairness opinion, the Recommendation Statement endorsed the Merger Agreement and recommended that shareholders tender their shares.  Emulex explained that the following nine factors supported its recommendation: (1) the value shareholders would receive in the merger "was greater than could be reasonably expected" in the future if they continued to hold Emulex stock; (2) other available alternatives and transactions were less favorable; (3) Emulex shareholders would receive a premium on their stock; (4) Goldman found that the merger was fair; (5) the cash consideration

---

[2] The Court previously granted Defendants' request for judicial notice of the Recommendation Statement.  (2016 Order at 4 n.2.)

shareholders would receive was certain; (6) Emulex could terminate the merger agreement if it received a better offer before closing; (7) Emulex could modify its recommendation if it received new offers; (8) the termination fee would not preclude subsequent third party offers; and (9) closing conditions were appropriate.  (*Id.* at 22–23.)

The Recommendation Statement also included a five-page summary of Goldman's fairness opinion.  (*Id.* at 25–30.)  The summary described the processes Goldman used to render its opinion.  It highlighted four specific analyses—the Historical Stock Trading Analysis, the Selected Companies Analysis, the Illustrative Present Value of Future Share Price Analysis, and the Illustrative Discounted Cash Flow Analysis—all of which considered metrics of Emulex's past, present, and expected financial performance and supported Goldman's ultimate fairness determination.  (*Id.* at 27–29.)

However, the Recommendation Statement did not reference a fifth financial analysis that Goldman presented to the Board—a one-page chart titled "Selected Semiconductor Transactions," which the parties refer to as the "Premium Analysis."  (*See* FAC at 35.)  The Premium Analysis "selected certain transactions in the industry" that Goldman deemed similar to the proposed merger between Avago and Emulex, and "reviewed the respective premiums stockholders received in those transactions compared to" the premium Emulex's stockholders were due to receive.  (*Id.* ¶¶ 137–138.) Specifically, it examined seventeen transactions involving semiconductor companies between 2010 and 2014.  (*Id.* at 35.)  It found that the offered 26.4% premium on Emulex's undisturbed stock price was below average but within the range of these transactions.  (*Id.* ¶¶ 140–141; *id.* at 35.)  It found the same for the 4.8% premium on the company's 52-week high closing share price.  (*Id.*)  Goldman apparently concluded that the tender offer was fair despite this below-average premium.  However, Defendants did not summarize the Premium Analysis in their Recommendation Statement.  That omission forms the basis of Plaintiff's claims.

The tender offer expired on May 5, 2015, with approximately 60% of the company's outstanding shares tendered.  (*Id.* ¶ 4.)  This was sufficient to consummate the Agreement and Merger Sub merged into Emulex, with Emulex surviving as a wholly owned subsidiary of Avago.  (*Id.*)

### B.    Procedural Background

On April 8, 2015—one day after the Recommendation Statement was published—Varjabedian filed a complaint, initiating this action.  (Dkt. 1.)  After limited and expedited discovery, Mutza filed the operative First Amended Complaint ("FAC") on September 17, 2015.  He asserted three causes of action under the Securities Exchange Act of 1934 ("Exchange Act") for (1) material misstatements and omissions in violation of Section 14(e), (2) incomplete disclosures in violation of Section 14(d)(4) and Rule 14d-9 promulgated thereunder, and (3) control person liability under Section 20(a).  Broadly, Plaintiff alleges that Defendants misled shareholders about the strength of the tender offer.  (*See id.* ¶¶ 53, 97, 126, 130.)

In January 2016, the Court granted Defendants' motion to dismiss for failure to state a claim and dismissed the FAC with prejudice.  It held that a claim for omissions under Section 14(e) requires a showing of scienter, which Plaintiff had not properly alleged.  (*See* 2016 Order at 7–8, 20–21.)  Specifically, the Court found that Defendants' decision to omit the Premium Analysis was not "highly unreasonable" or an "extreme departure from the standards of ordinary care" such that it could infer scienter from this omission alone.  (*See id.* at 15 [quoting *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009)].)  The Court similarly rejected Plaintiff's argument that the Individual Defendants' motivations revealed a strong inference of scienter.  (*Id.* at 17–18.)  The Court also held that Section 14(d)(4) does not create a private cause of action and dismissed Plaintiff's derivative Section 20(a) claim.  (*Id.* at 21–24.)

Plaintiff appealed, and the Ninth Circuit affirmed in part and reversed in part.  It affirmed the Court's finding that Section 14(d)(4) does not create a private cause of action.  *Varjabedian*, 888 F.3d at 409.  However, it rejected the Court's interpretation of Section 14(e).  Parting ways with five other circuits, the Ninth Circuit found that Section 14(e) requires a showing of only negligence, not scienter.  *Id.* at 408.  It therefore remanded for this Court to reconsider Defendants' motion under a negligence standard and to assess whether Plaintiff properly alleged a material omission.  *Id.* at 408–10.[3]

Defendants appealed, and the Supreme Court granted their petition for writ of certiorari.  *Emulex Corp. v. Varjabedian*, 139 S. Ct. 782 (2019).  Defendants argued that (1) the Ninth Circuit incorrectly interpreted Section 14(e) to require only a showing of negligence, (2) this interpretation improperly extended the implied private right of action under Section 14(e) to claims for negligence, and, more fundamentally, (3) Section 14(e) does not create *any* private cause of action.  *See* Brief for Petitioners, *Emulex Corp.*, 139 S. Ct. 782.  This last argument commanded significant attention at oral argument, even though—as Justice Ginsburg immediately pointed out—it was not raised before this Court or the Ninth Circuit.  *See* Transcript of Oral Argument, *Emulex Corp.*, 139 S. Ct. 782, 2019 WL 1598075, at *3–4.  Perhaps because of this issue, the Supreme Court dismissed the writ of certiorari as improvidently granted.  *Emulex Corp.*, 139 S. Ct. 1407.

The parties now return to this Court, and Defendants once again move to dismiss the FAC.  Their motions address: (1) whether the first clause of Section 14(e) creates a private cause of action, (2) whether Plaintiff properly alleges a material and misleading omission, and (3) whether Plaintiff states a claim under the Ninth Circuit's newly articulated negligence standard.  To create a complete record, the Court addresses each issue in turn.

---

[3] The Court's original order did not reach Defendants' argument that the omission of the Premium Analysis was not material.  (*See* 2016 Order at 7 n.3.)

## III.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  The issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted.  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.  *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994).  The district court may also consider additional facts in materials that the district court may take judicial notice, *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994), as well as "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled in part on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating that while a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, courts "are not bound to accept as true a legal conclusion couched as a factual allegation" (citations and quotes omitted)).  Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

//

//

# IV.  ANALYSIS

## A.    Legal Background: Section 14(e) of the Exchange Act and Parallel Provisions in Federal Securities Law

Plaintiff's sole remaining independent cause of action arises under Section 14(e) of the Exchange Act.  Section 14(e) governs tender offers for publicly traded companies and makes it unlawful "[1] to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or [2] to engage in any fraudulent, deceptive, or manipulative acts or practices in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation."  15 U.S.C. § 78n(e); *see Varjabedian*, 888 F.3d at 404 (explaining that the two separate clauses of Section 14(e) proscribe two different offenses).

Section 14(e) was not part of the original 1934 Exchange Act, but was added in 1970 as part of the Williams Act.  *See Varjabedian*, 888 F.3d at 404.  Courts have therefore looked to similar language in other provisions of securities laws to interpret Section 14(e).  These parallels are central to the decision above and the issues at hand.

### 1.    Section 10(b) of the Exchange Act and Rule 10b-5

Section 10(b) of the Exchange Act makes it unlawful to "[t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe."  15 U.S.C. § 78j(b).  Pursuant to this authority, the SEC promulgated Rule 10b-5, which makes it unlawful "(a) [t]o employ any device, scheme, or artifice to

defraud, (b) [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person," in connection with the purchase or sale of securities.  17 C.F.R. § 240.10b-5. An implied private right of action to challenge violations of Rule 10b-5 is recognized "beyond peradventure."  *Herman & MacLean v. Huddleston*, 459 U.S. 375, 380 (1983).

In its original order, the Court highlighted the identical language used in Section 14(e) and Rule 10b-5.  Following the reasoning of several other circuits, it concluded that, because Rule 10b-5 claims require a showing of scienter, Section 14(e) claims must require the same.  (*See* 2016 Order at 7–8.)  The Ninth Circuit reversed on this issue.  Its decision emphasized "the relationship between Rule 10b-5 and its authorizing legislation, Section 10(b) of the Exchange Act."  *Varjabedian*, 888 F.3d at 404.  In *Ernst & Ernst v. Hochfelder*, the Supreme Court explained that Rule 10b-5's scienter requirement derives from the SEC's limited authority under Section 10(b) to regulate only "manipulative or deceptive device[s]."  425 U.S. 185, 197, 212–14 (1976) (quoting 15 U.S.C. § 78j(b)). Because Section 14(e) has no similar limitation, the Ninth Circuit found it was error to transpose Rule 10b-5's scienter requirement to the first clause of Section 14(e).  *See Varjabedian*, 888 F.3d at 407.

2.    Section 17(a)(2) of the Securities Act of 1933

The Ninth Circuit also emphasized Section 14(e)'s similarities with Section 17(a)(2) of the Securities Act of 1933, 15 U.S.C. § 77q(a)(2).  While the Exchange Act governs securities exchange markets and publicly traded corporations, the Securities Act regulates the initial distribution of securities to public investors.  *See id.*; *Varjabedian*, 888 F.3d at 403–04.  Section 17(a)(2) specifically declares it unlawful "to

obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading" in the offer or sale of any securities.  15 U.S.C. § 77q(a)(2).  In *Aaron v. SEC*, the Supreme Court found that Section 17(a)(2) does not require a showing of scienter, but only negligence.  446 U.S. 680, 696–97 (1980).  In its decision in this case, the Ninth Circuit emphasized the "nearly identical" language in Section 17(a)(2) and the first clause of Section 14(e).  *Varjabedian*, 888 F.3d at 407.  It concluded that *Aaron* "cast doubt" on decisions finding that Section 14(e) requires scienter.  *Id.*

### B.    Private Right of Action Under Section 14(e)

Defendants now argue that the first clause of Section 14(e) does not create an implied private right of action.  Plaintiff responds that Ninth Circuit precedent clearly recognizes such a right and therefore forecloses this issue.  The Court agrees.

In *Plaine v. McCabe*, the Ninth Circuit held—in no uncertain terms—that the first clause of Section 14(e) creates an implied private right of action for shareholders of a target company.  797 F.2d 713, 718 (9th Cir. 1986).  Defendants concede that this Court lacks authority to overturn this decision.  (Emulex Mot. at 15 n.7.)  However, they attempt to thread the needle by arguing that the Ninth Circuit has recognized a private right of action for *knowing* violations of Section 14(e), but never for *negligent* violations.  (*Id.* at 14.)  Therefore, they contend, the question remains open on remand.  The Court is not persuaded.

First, nothing in the Ninth Circuit's previous decisions supports this distinction.  In *Plaine*, like the case at hand, a plaintiff-shareholder alleged that a target corporation omitted material information related to a tender offer.  797 F.2d at 716.  The court

recognized an implied private right of action under the first clause of Section 14(e) without reference to the relevant *mens rea* standard.  *Id.* at 717.  Contrary to Emulex's characterization, nothing in *Plaine* limited that right to "knowing" violations.  *See id.*

Defendants next argue that this question is open because the decision above "broke the parallelism that courts had long assumed to exist between Section 10(b), Rule 10b-5, and Section 14(e)."  (Emulex Mot. at 17.)  According to Defendants, previous decisions finding or assuming an implied private right of action under Section 14(e) depended on parallels between Section 14(e) and Rule 10b-5.  *See, e.g.*, *Smallwood v. Pearl Brewing Co.*, 489 F.2d 579, 596, 605 (5th Cir. 1974) ("Congress adopted in Section 14(e) the substantive language of the second paragraph of Rule 10b-5 and in so doing accepted the precedential baggage those words have carried over the years.").  Because the Ninth Circuit emphasized *distinctions* between these two provisions, *see Varjabedian*, 888 F.3d at 404–07, Defendants argue that it reopened the question of whether the first clause of Section 14(e) creates an implied right of action.  The Court disagrees.  Defendants fail to identify any Ninth Circuit decision that relies on similarities between these two provisions when recognizing an implied private right of action under Section 14(e).  *See id.*; *Pac. Realty Tr. v. APC Inv., Inc.*, 685 F.2d 1083, 1086 (9th Cir. 1982); *Polinsky v. MCA Inc.*, 680 F.2d 1286, 1291 (9th Cir. 1982).  Instead, they cite out-of-circuit cases to make this point.  (Emulex Mot. at 16–17 [citing *Smallwood*, 489 F.2d 579; *In re Digital Island Sec. Litig.*, 357 F.3d 322, 328 (3d Cir. 2004)].)  Defendants' "parallelism" argument is appealing, but this Court is bound by Ninth Circuit precedent.

Finally, the Ninth Circuit's decision in this case seems to foreclose the issue.  Emulex makes much of the Ninth Circuit's failure to *explicitly* rule that the Section 14(e)'s negligence standard applies in private causes of action.  But the court interpreted Section 14(e) in an appeal *brought by a private plaintiff*.  While the Ninth Circuit could have conceivably reserved judgment on the existence of a private cause of action, nothing

in its decision suggests this posture.  Indeed, the disposition makes the court's assumptions clear; it "reverse[d] the dismissal of the complaint and remand[ed] the case to the district court for it to reconsider Defendants' motion to dismiss under a negligence standard."  *Varjabedian*, 888 F.3d at 401.  The Ninth Circuit would not have instructed the Court to apply its newly articulated negligence standard unless it found it applicable to private actions.

"Considerations of *stare decisis* are particularly forceful in the area of statutory construction, especially when a unanimous interpretation of a statute has been accepted as settled law for several decades."  *IBP, Inc. v. Alvarez*, 546 U.S. 21, 32 (2005).  With this principle in mind, the Court finds that it cannot disturb a settled question of law in this Circuit.  The Ninth Circuit's decision may well prove a Pyrrhic victory for shareholders.  But Emulex's challenge to Section 14(e)'s widely recognized implied right of action is for another court and another day.

## C.    Misleading Omissions of Material Facts

Defendants next argue that Plaintiff fails to properly allege the substantive elements of a Section 14(e) claim.  By its plain terms, Section 14(e) only proscribes the omission of "material facts" necessary "to make the statements made, in the light of the circumstances under which they are made, not misleading."  15 U.S.C. § 78n(e).  The Court finds that Plaintiff fails to properly plead a misleading omission of material fact.

### 1.    Legal Standard: Materiality

The Ninth Circuit specifically instructed the Court to consider whether the omitted Premium Analysis was "material" on remand.  *See Varjabedian*, 888 F.3d at 408.

Unfortunately, and with all due respect, its decision muddies the waters as to the applicable standard:

> Although it is difficult to show that this omitted information was indeed material, we remand for the district court to consider the question in the first instance. *See Zucco Partners*, 552 F.3d at 991 ("[T]he plaintiff must plead a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." (internal quotation marks omitted)).

*Id.* at 408. Confusingly, the quoted language from *Zucco Partners, LLC v. Digimarc Corp.*, sets out the test for scienter, not materiality. 552 F.3d 981, 991 (9th Cir. 2009), *as amended* (Feb. 10, 2009). Specifically, it describes what a plaintiff must plead to show intentional or deliberate recklessness—*i.e.*, scienter—in a Rule 10b-5 case. *See id.*[4] Of course, the Ninth Circuit's decision held that scienter is *not* required to state a claim under Section 14(e), so this test should not apply to the case at hand. *See Varjabedian*, 888 F.3d at 408.

This dictum has created confusion in the lower courts. In at least two cases, district court decisions have quoted the excerpt above for the proposition that a material omission under Section 14(e) requires "a highly unreasonable omission" involving "not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care." *See Edenbrook Capital, LLC v. RhythmOne Plc*, 2019 WL 1791419, at *5 (N.D. Cal. Apr. 24, 2019) (quoting *Varjabedian*, 888 F.3d at 408); *In re Ocera Therapeutics, Inc. Sec. Litig.*, 2018 WL 7019481, at *9 (N.D. Cal. Oct. 16, 2018)

---

[4] This test was originally adopted by the Ninth Circuit in *Hollinger v. Titan Capital Corp.*, which explained that under Rule 10b-5, "[r]eckless conduct may be defined as a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care." 914 F.2d 1564, 1569 (9th Cir. 1990) (quoting *Sundstrand Corp. v. Sun Chem. Corp.*, 553 F.2d 1033, 1044–45 (7th Cir. 1977)).

(same).  This Court declines to follow suit.  The Ninth Circuit's passing reference to *Zucco Partners* was plainly dicta and did not disturb the Circuit's well-established test for materiality.  *See United States v. Johnson*, 256 F.3d 895, 915 (9th Cir. 2001) (explaining that statements "made casually and without analysis" do not necessarily establish binding precedent).  Indeed, the Ninth Circuit expressly declined to address the issue of materiality.  *See Varjabedian*, 888 F.3d at 408.  Instead, it focused on scienter and held that scienter is not an element of a Section 14(e) claim.  *See id.* at 404–08.  Accordingly, it found the test from *Zucco Partners*, which this Court quoted in its original order, inapplicable to the case at hand.  *See id.*; (2016 Order at 14).

The Court now turns to the established test for materiality.  "Facts are considered material if there is a substantial likelihood that a reasonable shareholder would consider them important when making an investment decision."  *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1281 (9th Cir. 1982).  Put differently, to state a claim for a material omission, there must be "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."  *Basic Inc. v. Levinson*, 485 U.S. 224, 231–32 (1976) (quotations omitted).[5]  This rule imposes identical requirements in Section 14(e) and Rule 10b-5 actions.  *Rubke*, 551 F.3d at 1167.

---

[5] Defendants argue that because the Premium Analysis compiled publicly available information its omission could not have altered "the 'total mix' of information made available."  *See Basic Inc.*, 485 U.S. at 231–32.  The Court disagrees.  "[T]he 'total mix' of information does not encompass the total universe of information available in the public domain."  *S.E.C. v. Mozilo*, 2010 WL 3656068, at *9 (C.D. Cal. Sept. 16, 2010).  Instead, courts in the Ninth Circuit distinguish between information in the "readily available general public domain" and information that is technically public, but buried in complex and technical SEC filings.  *See In re Textainer P'ship Sec. Litig.*, 2005 WL 3801596, at *6 (N.D. Cal. Dec. 12, 2005).  Goldman's Premium Analysis sourced information from SEC filings accessed using a Bloomberg research terminal.  (*See* FAC at 35.)  It also depended on Goldman's expert assessment of which transactions might be comparable to the Emulex tender offer.  (*See id.*)  Accordingly, Plaintiff has plausibly alleged that the information in Premium Analysis was not in the "readily available general public domain."  *See In re Textainer*, 2005 WL 3801596, at *6.

### 2.    Legal Standard: Misleading Omissions

To be actionable under Section 14(e), an omission must also be misleading.  As the Ninth Circuit explains, the Exchange Act "prohibit[s] only misleading and untrue statements, not statements that are incomplete."  *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).  To be misleading, an omission "must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists."  *Id.*  "Often, a statement will not mislead even if it is incomplete or does not include all relevant facts."  *Id.*

The Private Securities Litigation Reform Act ("PSLRA") imposes heightened pleading standards that gives substance to this requirement.  *See* 15 U.S.C. § 78u–4(b)(1). A shareholder-plaintiff asserting claims for material omissions must "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading."  15 U.S.C. § 78u–4(b)(1).  This requirement applies with equal force in claims for material omissions under both Rule 10b-5 and Section 14(e).  *See Rubke*, 551 F.3d at 1167.

### 3.    Analysis: Misleading Omissions of Material Facts

In securities claims based on omissions, the material and misleading requirements are often analyzed together.  *See Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008) ("[A] statement is misleading if it would give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists." (quotations omitted)); *Rubke*, 551 F.3d at 1167 (examining whether plaintiff properly established "materially misleading statements and omissions"); *Bell*, 669 F.2d at 1281 (same).  Emulex argues that Plaintiff has not identified statements that were

rendered misleading as to a material fact by the omission of the Premium Analysis, as required by the PSLRA.  The Court agrees.

Plaintiff alleges that the omission of the Premium Analysis "rendered certain portions of the Recommendation Statement that touted the premium Emulex's stockholders received in connection with the Transaction materially misleading."  (FAC ¶ 149.)  He specifically identifies only two statements.  First, he points to a paragraph in the Recommendation Statement that lists "a number of factors" that the Board believed supported its recommendation to tender.  (Recommendation Statement at 22–23.)  Defendants identified the 26.4% premium over the undistorted market price and 4.8% premium over the 52-week high as one such factor.  (*Id.*; FAC ¶ 147.)  According to Plaintiff, this statement "clearly creates the impression that the premiums supported the fairness of the Merger Consideration, when in reality the premiums were materially below the premiums stockholders of similar companies have received in connection with recently completed comparable transactions."  (FAC ¶ 148.)  Plaintiff also contends Defendants created "the materially misleading impression that the premium Emulex's stockholders received was significant, or at the very least in line with premiums obtained in similar transactions."  (*Id.* ¶ 8.)

Plaintiff relies on unwarranted inferences and an unreasonable characterization of the Recommendation Statement.  As explained in the Court's original order, "[t]he Recommendation Statement creates no impression in the reasonable reader that the Emulex premiums were either higher or lower than the average premiums in the industry."  (2016 Order at 11–12.)  Instead, it identifies the premiums as one of several factors that the Board ultimately determined weighed in favor of its recommendation to tender.  (Recommendation Statement at 22–23.)  As any reasonable reader would understand, the Board's assessment of whether the premium was fair depended on its evaluation of the company's value, growth, and profitability.  Indeed, the

Recommendation Statement makes this obvious.  It summarizes Goldman's "Selected Companies Analysis," which compares Emulex's revenue and market value to other companies in the networking and information storage industry.  (*Id.* at 27–28.)  This analysis shows Emulex's below-average growth, below-average market performance, and below-average profit margins.  (*Id.*)  These metrics are entirely consistent with the Premium Analysis, which shows that the Emulex premium was below-average for the industry but within a reasonable range of outcomes.  (FAC at 35.)[6]  Based on these analyses, the Board concluded that the premium weighed in favor of the tender offer.  The Recommendation Statement summarizes that assessment.  Accordingly, the omission of the Premium Analysis did not "affirmatively create" the false impression that the premium was above average.  *See Brody*, 280 F.3d at 1006; *see also Ridler v. Hutchinson Tech. Inc.*, 216 F. Supp. 3d 982, 990 (D. Minn. 2016) (finding that the omission of a similar analysis did not render proxy statement misleading).

Importantly, Plaintiff does not challenge the Board's ultimate opinion that the 26.4% premium was fair to shareholders and weighed in favor of the tender offer.  A Section 14(e) plaintiff can recover for a material misstatement of opinion "only if the complaint alleges with particularity that the statements were both objectively and subjectively false or misleading."  *Rubke*, 551 F.3d at 1162.  A statement of opinion is objectively false if it is "seriously undermined by undisclosed facts or unreasonable assumptions or [] does not follow generally accepted accounting principles."  *In re Hot*

---

[6] As the Court previously explained, the Premium Analysis examines seventeen transactions conducted between 2011 and 2014.  The Emulex premium over its sale price as of the announcement—26.4%—is higher than four of the surveyed transactions, and lower than 13.  (FAC at 35.)  The Emulex premium over the 52-week high price of Emulex stock—4.8%—is higher than four of the surveyed transactions, and lower than 10 (fewer data was available for 52-week highs).  (*Id.*)  When compared against only the 2014 transactions in the Premium Analysis, Emulex's 26.4% sale price premium would have rated sixth out of nine, and its 4.8% 52-week premium would have rated fifth out of seven.  (*Id.*)  In other words, although Emulex's premiums are in the bottom half of the distribution, they are decidedly within the normal range of transactions, and not "drastically below the premium stockholders of similar companies had received in connection with comparable transactions," as Plaintiff alleges.  (FAC ¶ 7.)

*Topic, Inc. Sec. Litig.*, 2014 WL 7499375 at *6 (C.D. Cal. May 2, 2014) (citing *Knollenberg v. Harmonic*, 152 Fed. Appx. 674, 678 (9th Cir. 2005). The Board's opinion is not "seriously undermined" by the omitted analysis, which shows that the premium was within a normal range. *See id.*; *City of Hialeah Emps. Ret. Sys. v. FEI Co.*, 289 F. Supp. 3d 1162, 1179–80 (D. Or. 2018) ("Because . . . Plaintiff has not sufficiently alleged that the inputs and assumptions relied upon for the fairness analysis . . . were inaccurate or misleading, Plaintiff has also failed to sufficiently allege that the Fairness Opinion based upon them was materially misleading."). Plaintiff's efforts to dodge this standard are unavailing.

The only other allegedly misleading statement identified by Plaintiff is the summary of Goldman's fairness opinion in the Recommendation Statement. While the summary identifies several other analyses conducted by Goldman, it fails to mention the Premium Analysis. (*See* Recommendation Statement 25–30.) According to Plaintiff, "it is misleading to 'summarize' a banker's fairness opinion valuation analyses while simultaneously omitting the analysis that cuts against the purported fairness of the merger." (*See* Opp. to Board Mot. at 20.)

The Court disagrees. As explained in its original order, "a fairness opinion summary is just that—a summary—which cannot be expected to include every relevant or meaningful bit of analysis performed by a financial advisor." (2016 Order at 15.) Indeed, the Recommendation Statement notes that its summary of Goldman's fairness opinion "does not purport to be a complete description of the analyses performed by Goldman in connection with its opinion." (Recommendation Statement at 29.) As this Court explained in another case, "just because a particular analysis was worth considering by the board does not mean that is material to a reasonable investor" and therefore required to be contained within a summary. *Masters v. Avanir Pharm., Inc.*, 996 F. Supp. 2d 872, 885 (C.D. Cal. 2014). A different rule would risk burying

shareholders "in an avalanche of trivial information." *See TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 448 (1976).  And Section 14(e) does not prohibit incomplete statements, "only misleading and untrue statements."  *Brody*, 280 F.3d at 1006.

Moreover, Plaintiff's explanation for *why* the summary of the fairness opinion is misleading falls flat.  Goldman concluded that the tender offer was fair, and the Recommendation Statement explains the basis for that conclusion.  The omitted analysis shows that the Emulex premium was in the lower range of comparable transactions.  But Goldman was not tasked with determining whether the premium was above average, nor did Defendants imply such a finding.  Indeed, nothing in the summary of Goldman's fairness opinion would give a reasonable investor the false impression that the premium was above average.  *See Berson*, 527 F.3d at 985.  To the extent Plaintiff alleges that the fairness opinion itself was false or misleading, he has not identified any information that "seriously undermines" Goldman's opinion, nor explained why Defendants should be liable for Goldman's misstatements.  *See In re Hot Topic*, 2014 WL 7499375 at *6; *City of Hialeah*, 289 F. Supp. 3d at 1179–80.

Although determining whether an omission is material and misleading "should ordinarily be left to the trier of fact, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."  *In re Cutera*, 610 F.3d at 1108 (quotations omitted).  "The PSLRA reinforces this longstanding general principle of securities law and imposes a heightened pleading standard."  *Id.* Plaintiff's claims rely on unwarranted inferences, and he ultimately fails to identify any statements rendered misleading as to a material fact as required by the Exchange Act and the PSLRA.  Accordingly, Defendants' motions to dismiss Plaintiff's Section 14(e) claim are **GRANTED**.

//

**D.     Negligence**

To develop a complete record for appeal, the Court now turns to Defendants' alternative argument that Plaintiff fails to satisfy the Ninth Circuit's newly articulated negligence standard.  The Court first considers whether the PSLRA's heightened pleading standards for a defendant's state of mind apply.

1.     Heightened Pleading Standard for State of Mind under the PSLRA

The PSLRA imposes special pleading requirements for private securities claims in which "the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind."  15 U.S.C. § 78u–4(b)(2)(A).  For such claims, "the complaint shall, with respect to each act or omission alleged to violate this title, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  *Id.*  The parties dispute whether this requirement applies to claims that require only negligence.  The Court finds that it does not.

Negligence is not a state of mind, but a standard of care defined by a defendant's conduct.  *See Fargo v. City of San Juan Bautista*, 857 F.2d 638, 642 (9th Cir. 1988).  As the Ninth Circuit has explained, negligence "refer[s] to and categorize the actor's conduct rather than his or her state of mind," and state of mind is "not at issue" in a claim for negligence.  *Id.*  As discussed below, negligence in a securities action depends on whether defendants exercised reasonable prudence in their actions and inactions—their state of mind is ultimately irrelevant.  *See SEC. v. Dain Rauscher, Inc.*, 254 F.3d 852, 856 (9th Cir. 2001).  Accordingly, under the Ninth Circuit's interpretation of the first clause of Section 14(e), liability does not depend on "proof that the defendant acted with a particular state of mind."  *See* 15 U.S.C. § 78u–4(b)(2)(A); *see also Blau v. Harrison*, 2006 WL 850959, at *5 (N.D. Ill. Mar. 24, 2006) (finding § 78u–4(b)(2)(A) inapplicable

to "claims . . . based on averments of negligence").  The Court therefore concludes that the PSLRA's "strong inference" requirement does not apply here.  *See* 15 U.S.C. § 78u–4(b)(2)(A).[7]

Defendants cite several district court decisions, and one unpublished Ninth Circuit decision, that appear to reach the opposite conclusion.  These decisions required Section 14(a) plaintiffs to "plead with particularity facts that give rise to a strong inference of negligence."  *See Knollenberg v. Harmonic, Inc.*, 152 F. App'x 674, 683 (9th Cir. 2005); *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1267 (N.D. Cal. 2000); *Hutton v. McDaniel*, 264 F. Supp. 3d 996, 1016 (D. Ariz. 2017).  But none address the issue identified by Plaintiff: whether negligence—the failure to exercise due care—should be treated as a "particular state of mind."  *See* 15 U.S.C. § 78u–4(b)(2)(A).[8]  Nor have Defendants explained why the Court should disregard the Ninth Circuit's clear pronouncement that negligence is *not* a state of mind.  *See Fargo*, 857 F.2d at 642.  The Court therefore considers whether Plaintiff properly alleges negligence under the normal pleading standards of the Federal Rules of Civil Procedure.

//
//
//

---

[7] Respectfully, the PSLRA raises questions about the Ninth Circuit's decision.  Congress passed the PSLRA in 1995 to impose higher pleading standards in private securities actions.  *See* 15 U.S.C. §§ 78u–4–78u-5.  At that point, the Second, Fifth and Sixth Circuits had found that Section 14(e) required scienter.  *See Conn. Nat'l Bank v. Fluor Corp.*, 808 F.2d 957, 961 (2d Cir. 1987); *Smallwood v. Pearl Brewing Co.*, 489 F.2d 579, 605 (5th Cir. 1974); *Adams v. Standard Knitting Mills, Inc.*, 623 F.2d 422, 431 (6th Cir. 1980).  The PSLRA did not disturb these decisions and, indeed, raised the bar for Section 14(e) claims as interpreted at the time.

[8] Indeed, in the first and most widely quoted of these cases, the lead plaintiff conceded, and the court apparently assumed, that the negligence required for a Section 14(a) claim is a "state of mind."  *See In re McKesson HBOC*, 126 F. Supp. 2d at 1267.

2.    <u>Failure to Exercise Reasonable Prudence</u>

The Ninth Circuit's decision did not offer any guidance on how to apply a negligence standard in Section 14(e) claims.  However, for Section 17(a)(2) claims, which the Ninth Circuit found analogous to Section 14(e), negligence means a failure to exercise "reasonable prudence."  *Dain Rauscher, Inc.*, 254 F.3d at 856.  As in other claims for professional negligence, proof of adherence to an industry practice is relevant, but not dispositive, because "what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not."  *Id.* (quotation omitted).[9]

The Court finds that Plaintiff has not alleged negligent conduct by Emulex or the Individual Defendants.  As discussed above, the Board was entitled to summarize Goldman's fairness opinion without disclosing every piece of data Goldman used in its analyses.  *See Masters*, 996 F. Supp. 2d at 885.  Indeed, investors would be done great harm if companies dumped entire financial analyses into recommendation statements and expected investors to sift through the mess.  Defendants' professional and regulatory obligation was to "state the reasons" for the position set out in the Recommendation Statement.  17 C.F.R. § 229.1012(d).  They complied with this obligation by explaining the various factors that supported their recommendation.  (Recommendation Statement at 22–23.)  Plaintiff's primary argument is that the omission of the Premium Analysis was negligent because it was material and misleading.  (*See* Opp. to Board Mot. at 10–11.) The Court has already rejected this premise.  Defendants never asserted that the premium was above average and, in fact, summarized Goldman's findings that the company had

---

[9] Relying on the Ninth Circuit's citation to *Zucco Partners*, the Individual Defendants argue that the Ninth Circuit's decision embraces an "extreme departure" test for negligence.  (*See* Board Mot. at 6.) Confoundingly, this would mirror the test for scienter applied in the Court's original order and rejected by the Ninth Circuit.  (*See* 2016 Order at 14 [quoting *Zucco Partners*, 552 F.3d at 991].)  As discussed above, the Court finds that this dictum did not modify the Ninth Circuit's unequivocal holding that "Section 14(e) requires a showing of only negligence, not scienter."  *Id.* at 408.  Accordingly, the "extreme departure" standard does not apply.

below-average growth, below-average market performance, and below-average profit margins.  (Recommendation Statement at 27–28.)

Plaintiff has also not plausibly alleged that the Premium Analysis was so important that its omission was negligent.  In fact, there are good reasons to doubt that the Premium Analysis says anything significant about the merits of the Emulex-Avago merger.  As the Recommendation Statement describes, Goldman went to considerable lengths to conduct a Selected Companies Analysis, which compared Emulex to companies "chosen because they are publicly traded companies with operations that, for purposes of analysis, may be considered similar to certain operations of Emulex."  (*Id.* at 27.)  But none of the companies in the Selected Companies Analysis appear in the Premium Analysis (*i.e.*, they were not among the companies involved in the mergers described in the chart).  Instead, the Premium Analysis compiled information about semiconductor companies, a related but ultimately distinct sector of the industry.  It also included mergers that occurred four years before Avago's tender offer.  Defendants could have reasonably concluded that the mergers in that analysis were not similar enough to the Avago-Emulex merger to convey useful information about the premium.  Indeed, the Premium Analysis evidently did not trouble Goldman, which ultimately determined that the deal was fair.

The record in this case suggests that after obtaining limited discovery Plaintiff scoured the financial analyses performed by Goldman looking for anything negative about the merger that did not appear in the Recommendation Statement.  He has come up only with the Premium Analysis—a one-page chart.  Even construing the allegations in the FAC in the light most favorable to Plaintiff, the exclusion of that chart from the fairness opinion summary does not plausibly suggest negligence.

//

//

**E.    Section 20(a) Claim**

As in the Court's previous order, Plaintiff's Section 20(a) claim fails alongside his Section 14(e) claim.  "[T]o establish a cause of action under [Section 20(a)], a plaintiff must first prove a primary violation of underlying securities laws."  *See In re NVIDIA*, 768 F.3d at 1052; *see also Varjabedian*, 888 F.3d at 409 (explaining that Plaintiff's "claims under Section 20(a) of the Exchange Act necessarily depend on Plaintiff's Section 14(d)(4) and (e) claims").  Because Plaintiff has not successfully alleged a violation of federal securities law, Defendants' motions to dismiss Plaintiff's Section 20(a) claim are **GRANTED**.

**F.    Leave to Amend**

Although a district court should grant a plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations, *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995), it need not grant leave to amend if amendment of the complaint would be futile, *see Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051–52 (9th Cir. 2008). Plaintiff requests leave to amend should Defendants' motions be granted, but the Court sees no reason to grant leave here.  Prior to the Court's original dismissal order and the ensuing appeal, Plaintiff obtained discovery and filed an amended complaint.  *See DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 391 (9th Cir. 2002) (affirming district court's denial of leave to amend where plaintiffs in a securities fraud case failed to satisfy the PSLRA in an amended complaint).  Plaintiff's counsel has not identified any additional facts that Plaintiff could allege beyond those in the FAC and the judicially noticed materials.  In the FAC, Plaintiff put his best foot forward regarding the materiality and misleading nature of the omitted information but failed to state a claim.  After nearly five years of litigation, it would be a pointless exercise and an unnecessary waste of the parties' resources to permit Plaintiff to file yet another amended complaint.

This is especially true given the heightened pleading standard for materiality under the PSLRA. *See In re VISX, Inc. Securities Litig.*, 2011 WL 210481, at *11 (N.D. Cal. Feb. 27, 2011) (denying leave to amend where plaintiffs failed to identify facts that would allow them to satisfy the PSLRA's pleading requirements).[10]

Ultimately, Plaintiff has not alleged, and cannot allege, a violation of securities law based on Defendants' failure to disclose the Premium Analysis in connection with the Recommendation Statement. Accordingly, the FAC is **DISMISSED WITH PREJUDICE**.

**IV.  CONCLUSION**

For the foregoing reasons, Defendants' motions to dismiss are **GRANTED**, and the First Amended Complaint is **DISMISSED WITH PREJUDICE**.

DATED:    February 25, 2020

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE

---

[10]  Judge Breyer also denied leave to amend in *In re VISX, Inc.* because plaintiffs were "represented by experience securities fraud class action counsel who are intimately familiar with the PSLRA and the Ninth Circuit's stringent interpretation of its pleading standards," and because plaintiffs in that case amended their complaint "more than five months after the original lawsuits were filed."  2001 WL 210481, at *11.  Both rationales are present here as well; Plaintiff is represented by competent securities counsel who understand the uphill battle of pleading a materially misleading omission, and Plaintiff's amended complaint was filed on September 17, 2015, more than five months after he filed his original complaint in April.  (*See* Dkt. 1; Dkt. 29.)